SIMMONS v. CLAMPITT PAPER CO.

No. 14088.

Court of Civil Appeals of Texas. Dallas.

July 8, 1949.

Rehearing Denied Oct. 21, 1949.

Smithdeal & Lefkowitz, of Dallas, for appellant.

Lewis F. Russell and Hamilton & Hamilton, all of Dallas, for appellee.

CRAMER, Justice.

Appellee occupied a building owned by John J. Simmons, now deceased, under a written lease and on the 17th day of September, 1945, leased an adjoining building from him known as 1001 Broom Street (located on Lot 10, Block 388, City of Dallas). 1001 Broom Street was actually owned by, and was the separate property of, Mr. Simmons' wife, appellant here, who did not join in the lease. The lease provided for a rental of $600 per month with an optional renewal for a period of 60 months from its expiration date, on six months written notice before expiration of the lease. Mr. Simmons died January 29, 1948; after his death Mrs. Simmons, in company of her nephew Milton C. Justice, asked the appellee to pay the rental on her building direct to her and not to the administrator of her husband's estate. Mr. Clampitt produced and handed to appellant and her nephew his lease which they examined and handed back. Mr. Clampitt then stated that he would like something in writing. Thereafter, on the next day, Milton C. Justice delivered to appellee Mrs. Simmons' written memorandum, as follows:

"Clampitt Paper Co.,
"2209 Griffin Street,
"Dallas, Texas.
"Gentlemen:

"In accordance with your request to Mr. Milton C. Justice, I am submitting the following information. I hereby certify that I am the sole owner of the building leased by you at 1001 Broom Street, known as Lot No. 1, and the southeast half of Lot No. 2 in Block No. 388, as appears in Deed of Records of Dallas County Vol. 1176, Page 207. Inasmuch as this property belongs to me this will be your authority to issue check payable to me for $600.00 per month and the balance of the rent for the property you now lease will be paid to the First National Bank of Dallas as Administrator of the Estate of John J. Simmons. Yours truly, Lena Justice Simmons."

After receipt of this letter appellee paid the rent direct to appellant and on one or two occasions made advancements to her on rent not yet due. Within the time prescribed by the lease, appellee gave written notice of its exercise of the option to renew and requested that she execute it a written lease for the extended period. Upon disagreement as to the terms of the extended lease, after appellant went to a lawyer, she declined to go further under the lease made by her deceased husband on her property and asserted that appellee had no lease.

This action was for a declaratory judgment. The judgment of the trial court declared that the lease made by Mr. Simmons was ratified by appellant by her letter above quoted and the acceptance of benefits under the lease; that the renewal was effectively exercised and that the lease was effective for 60 months from its original

expiration date. This appeal was perfected and the matter is now properly before us for review.

Appellant assigns five points of error in substance as follows: (1) Error in refusing to hold the lease on her separate property void; (2) error in giving effect to the lease on her separate property based on the fact that her property had been occupied under the lease and her husband had collected the rents during his lifetime, since the unexpired portion after his death, including the option to renew, was void; (3) error in holding the letter above quoted amounted to a ratification of the lease; (4) error in holding that appellant was estopped to deny the validity of the lease and option to renew, by suggesting to appellee that she did not have facilities to prepare the renewal, and by allowing appellee to employ its attorney to prepare and present the renewal (which she refused to sign); and (5) error in holding and decreeing that notwithstanding the statute of frauds, under the circumstances here, appellee has possession of the premises for the term and on the conditions provided in the lease and the extended term thereunder.

We will discuss all assignments together.

■ The written lease signed by John J. Simmons during his lifetime, without a joinder of his wife, was not binding on her.

■ The rents, however, were community property and, with her acquiescence, were payable to him. Chandler v. Alamo Mfg. Co., Tex.Civ.App., 140 S.W.2d 918 (Syl. 4). When Mr. Simmons died, Mrs. Simmons could have disaffirmed the lease; could have refused to go forward with the lease; and her election to avoid would have been final. However, she did not do so; she demanded that the rent on the property be paid to her; and when shown the lease and, with her nephew Mr. Justice, given the opportunity to fully read it, she wrote the letter we have quoted above.

■ This letter was sufficient, when taken with the lease, to satisfy the statute of frauds, Vernon's Ann.Civ.St. art. 1288, and to ratify the lease.

It was not necessary that the contract be all in one writing to satisfy the statute of frauds. At the time the letter was written, the rent demanded and accepted by appellant, she was sui juris. As said by Judge Speer in his Law of Marital Rights: " * * * she is governed by the same general rules applicable to others." Page 359, sec. 382. In reference to the test in connection with ratification, Judge Speer said: "Indeed, the courts have leaned very far toward ignoring her ratification of his unauthorized act, and permitting her to recover her property, even where she has done those things which would, *were she sui juris,* amount to ratification." Page 183, sec. 137 (emphasis ours).

■ In our opinion, Mrs. Simmons, while sui juris, ratified the lease and by her letter satisfied the statute of frauds; and by such ratification and letter elected to adopt her deceased husband's act as her own. The rule with reference to an election is stated by our Supreme Court in the early case of Doty et al. v. Barnard et al., 92 Tex. 104, 47 S.W. 712, 713, where it adopted and approved a statement from Herman on "Estoppel and Res Judicata" as follows: "The doctrine of election is founded upon the principle that there is an implied condition that he who accepts a benefit under an instrument must adopt the whole of it, conforming with all of its provisions, and renouncing every right inconsistent with them. The principle is recognized and established in this country almost precisely the same as in England, and rests upon the equitable ground that no man can be permitted to claim inconsistent rights with regard to the same subject, and that any one who claims an interest under an instrument is bound to give full effect to that instrument as far as he can. A person cannot accept and reject the same instrument, or, having availed himself of it as to part, defeat its provisions in any other part; and this applies to deeds, wills, and all other instruments whatsoever."

■ Even married women can ratify void or voidable acts of their husbands by accepting the benefits and recognizing such acts in subsequent instruments executed under such formalities as are required by law. Reserve Petroleum Co. v. Hodge, Tex.Sup., 213 S.W.2d 456; Greene v. White, 137 Tex.

361; 153 S.W.2d 575, 136 A.L.R. 626; Grissom v. Anderson, 125 Tex. 26, 79 S.W.2d 619; Glasscock v. Farmers Royalty Holding Co., 5 Cir., 152 F.2d 537.

The case of Carrier v. McDonald, Tex. Civ.App., 218 S.W.2d 257, relied on by appellant, is not in point. The sole ground on which ratification was based in that case was the collection of rent by the wife. The collecting of rent, alone, would not satisfy the statute of frauds. Here, there is the addition of knowledge of the lease; her written letter recognizing it and demanding the rent thereunder (which satisfies the statute of frauds); her receipt of notice on the option to renew; and her request of appellee to go to the expense of employing its lawyer to draw a renewal.

Too, we think the statements in the Carrier v. McDonald case with reference to acts of confirmation (in the last paragraph of the opinion), while proper under the facts in that case, were, as a statement of general law, too broad.

From what we have said, we overrule all points of error and the judgment below is therefore affirmed.

YOUNG, J., concurs.

BOND, C. J., dissents.

BOND, Chief Justice (dissenting).

This suit was instituted by Maxwell Clampitt and C. A. Sammons, d/b/a Clampitt Paper Company, against Mrs. Lena Justice Simmons pursuant to the Uniform Declaratory Judgments Act, Vernon's Ann. Civ.St., Art. 2524—1 et seq., to determine the rights of the respective parties under a written lease contract to real estate belonging to Mrs. Simmons. The lease contract was entered into by her husband, John J. Simmons, with the Paper Company on September 17, 1945, effective on January 1, 1946, at the time when appellant herein (Mrs. Lena Justice Simmons) was the wife of John J. Simmons, she not signing or otherwise entering into the lease agreement with her husband. John J. Simmons executed the lease as being the owner of the property, and the covenants and agreements therein were personal as to him and the lessee.

The contract, being in writing, correctly described the property and recited John J. Simmons as lessor and Clampitt Paper Company as lessee; the consideration was the sum of $23,400 payable in 39 monthly installments of $600 each, payable monthly in advance, with the optional provisions as follows:

"14th. It is agreed and understood that the lessee has option of renewing the within lease with the same terms and conditions by giving the lessor six months notice prior to expiration.

   *    *    *    *    *    *

"16th. It is agreed that the within conditional option shall be for Sixty (60) months in lieu of Thirty-nine (39) months."

On the effective date of the lease, the lessee (appellee) went into possession of the premises, paid the installment rentals to Mr. Simmons as they became due, and complied with all the provisions of the lease without molestation or complaint until his death on January 29, 1948. Three or four days after the death of Mr. Simmons, in conversation with Mr. Clampitt, Mrs. Simmons told Mr. Clampitt that she had been unable to locate the lease to the building in Mr. Simmons' desk, and that she wanted him to pay her the rents separately from the rents on another building he had leased on Griffin Street belonging to the estate of her husband, which latter rents should go to the First National Bank,—it being the administrator of the estate. Mr. Clampitt testified: "I told Mrs. Simmons I was sure it would be all right, but I would like for her to give me a letter, because it might be two people would want the rent." Whereupon, on February 4, 1948, Mr. Clampitt received the following letter from Mrs. Simmons:

"Clampitt Paper Co.,
"2209 Griffin Street,
"Dallas, Texas.
"Gentlemen:

"In accordance with your request to Mr. Milton C. Justice, I am submitting the following information.

"I hereby certify that I am the sole owner of the building leased by you at 1001 Broom Street, known as Lot No. 1, and the southeast half of Lot No. 2 in Block No. 388, as appears in Deed of Records of Dallas County Vol. 1176, Page 207. Inasmuch as this property belongs to me this will be your authority to issue check payable to me for $600.00 per month and the balance of the rent for the property you now lease will be paid to the First National Bank of Dallas as administrator of the Estate of John J. Simmons. Yours truly, Lena Justice Simmons."

On February 5, 1948, in compliance with the request in above letter, Mr. Clampitt paid Mrs. Simmons, by check of that date, $600 for the February installment; and in like manner the installments for each month thereafter down to and including the month of October 1948. These checks were severally endorsed and cashed by Mrs. Simmons. On May 8, 1948, Mr. Clampitt wrote Mrs. Simmons, advising that he wished to exercise the option of extension to the aforesaid lease according to its terms as outlined in "Condition No. 16" of the lease, and "To renew the lease on the building as per these conditions." In that connection, the following testimony of Mr. Clampitt is quoted:

"Q. Following that did you have any conversation with her about the option and the new lease that you are asking for? A. Yes. She came in, I think it was a few days after I had written that letter, with the letter in her hand, and asked me what she should do about it, and obviously she didn't understand too much about business. I explained to her what we were doing was exercising our option on the building, that if she chose she could make up her own lease and bring it down and I would sign it, or I would have it done, either way she would like. She said she didn't have the facilities and it would be all right to have me make it up; so I went ahead and asked Lewis Russell to prepare the lease.

"Q. Has she ever executed it and returned it to you, Mr. Clampitt? A. No.

"Q. The option lease has not been executed? A. No."

On cross-examination:

"Q. You did have your lawyer fix a lease form up for them, didn't you? A. Yes, sir.

"Q. And had it presented to her? A. Yes.

"Q. Did your lawyer present it to her? A. As far as I know.

"Q. And she refused to sign it? A. Yes.

"Q. And she never has signed it, has she? A. No."

Subsequently, after obtaining legal advice, Mrs. Simmons demanded that lessee vacate the premises, contending that it had no valid subsisting lease thereon; that, in consequence, she was entitled to the possession of her property; which demand resulted in plaintiff instituting this suit for declaratory judgment for "a full and complete declaration with regard to the lease with respect to the parties' rights, liabilities, duties and legal relations; that the defendant, her agents, servants and employees, pending this action, be enjoined from asserting any claim against the plaintiff for possession of said premises as described in said lease contract and from instituting any action at law or suit in equity against the plaintiff for the recovery of said premises, for general relief and costs of suit."

The trial being before the court without the aid of a jury, and the evidence basically undisputed as above related, judgment was entered in favor of the plaintiff (appellee), determining and declaring that the defendant (appellant) is legally bound under the terms and conditions of the original lease contract, under the declaration that the defendant, subsequent to the death of her husband (she then being a feme sole), by her acts, conduct, and letter above quoted, adopted, ratified, and confirmed the erstwhile non-enforceable lease contract made by her husband, John J. Simmons; Arts. 1299, 6605, 6606, R.S.; hence the defendant became legally bound to accept the sum of $600 per month rental for the leased premises for the primary term of said original lease expiring March 31, 1949, and for the additional term of 60 months beginning April 1, 1949 and ending March 31, 1954; and that the defendant refrain from demanding any other or further com-

pensation for the rental of said premises and from disturbing the lessee's possession as tenant under the said lease. Reciprocally, the court determined and declared that the plaintiff is liable to the defendant for the payment of said rentals and to keep and perform all covenants and agreements made and provided in the original lease contract, and for extension of the 60-months optional period perforce of the exercise by lessee of provisions in said lease. In brief, the judgment determines that the original lease, after the death of appellant's husband, is not void of enforcement because of the alleged aforesaid ratification and estoppel by the defendant while she was a feme sole—her disabilities being removed on death of her husband—and in accordance with such ratification and estoppel plaintiff is entitled to the exercise of the extended option provided in the lease.

It is undisputed that the property involved was the separate property of Mrs. Lena Justice Simmons at all times after July 11, 1927; and, as against appellant's plea of non est factum, there was no evidence offered showing authority of her husband to lease her separate property, or that she knew the terms and conditions of the lease. On the contrary, it is undisputably shown that Mrs. Simmons did not know the terms and conditions, and, particularly, the provisions granted lessee to extend the lease for 60 months after the expiration of the original period. Therefore, the lease not having been executed in the manner pointed out in Arts. 1299, 6605, 6606, R.S., requiring that conveyances of the wife's separate property be jointly executed by the husband and wife and acknowledged by the wife privily and apart from her husband, before some officer authorized by law to take acknowledgements, the lease did not take effect during the marital status of Mr. and Mrs. Simmons. The lease, therefore, being void of enforcement as to her and against her property, the only mode whereby it could affect her rights after the death of her husband was by ratification or confirmation, in writing, extending the term of the lease over the period of one year.

A lease for a longer time than one year is an estate in land, and the instrument creating such an estate is a conveyance and must be in writing. Married Women's Statutes, Arts 1299, 6605, 6606, supra; statute of Frauds, Art. 3995 R.S.; Dority v. Dority, 96 Tex. 215, 71 S.W. 950, 60 L.R.A. 941; Laird v. Laird, Tex.Civ.App., 52 S.W. 2d 1113; Hill v. Hunter, Tex.Civ.App., 157 S.W.247. A void lease, as regards the separate estate of a married woman, may be ratified and confirmed after the death of her husband, while she is a feme sole; but in such case the ratification or confirmation must be in writing and of such intended certainty as to make the lease a continued contract of her own—"a new agreement after her discoverture, with all the essentials of a valid contract.". Jordan v. Abney, 97 Tex. 296, 78 S.W. 486, 490; Thompson v. Crim, 132 Tex. 586, 126 S.W.2d 18, 20. In the latter case, Judge German, speaking for the Commission of Appeals, opinion adopted by the Supreme Court, said: "Without regard to the question of whether or not a void instrument may be ratified by a married woman, and without regard to the question of when such a ratification may be made effective, it is certain that as regards the separate estate of a married woman in land a ratification cannot be made except in language showing a clear intent and purpose to ratify and confirm, expressed in an instrument executed in the manner required by law for conveyance by a married woman of her separate estate in land."

In the case here, the lease being void perforce of the Married Women's Statutes, supra, its terms and conditions could be ratified only by an instrument sufficient in itself to constitute a lease; and, none being reflected in the record, there was no ratification.

The letter of Mrs. Simmons in evidence, which is sought by appellee to be interpreted as an agreement or memorandum on the part of Mrs. Simmons, after she became competent to contract, as a ratification or confirmation of the lease, it will be observed, makes no reference to the lease contract or the continuation of the lease as to be a new agreement embodying essentials of a valid lease. The recital cannot operate within itself as a conveyance or lease, or

as a re-execution or ratification of the former void lease. There are no apt words of conveyance or lease from Mrs. Simmons in the recitals of the letter. The terms "I hereby certify that I am the sole owner of the building leased" and "to issue check payable to me for $600.00 per month" are merely descriptive of, or designate the building for which she demanded the payment of the $600 per month. There is no reference made to a former lease or a ratification of its terms and conditions, or the length of time the $600 per month shall be paid; nor does it state who were the lessor and lessee. Therefore, as said by Judge German in Thompson v. Crim, supra, in commenting on the opinion of Merriman v. Blalack, 56 Tex.Civ.App. 594, 121 S.W. 552, he pointed out that there were no apt words of conveyance in the bare recital in the deed to Guzman that the land had been conveyed by her, so as to operate as a new grant, without which such recital could not operate to import to the void deed an efficacy it did not before possess. Ratification or confirmation to make good a voidable or defeasible estate, cannot operate by the mere acceptance of benefits, unless such ratification or confirmation be in writing,—a memorandum in writing, as provided by the statute of frauds—and state, with reasonable certainty the essential elements of agreement, or contain references to some other writing which so states essential elements. Rosen v. Phelps, Tex.Civ.App., 160 S.W. 104; Sneed v. Lester, Tex.Civ.App., 76 S.W.2d 802; Walker Avenue Realty Co. v. Alaskan Fur Co., Tex.Civ.App., 131 S.W.2d 196; Jackman v. Anheuser-Busch, Inc., Tex.Civ. App., 162 S.W.2d 744. As clearly stated in Rosen v. Phelps, supra [160 S.W. 105], " 'No part of such contract is more essential than that which identifies the subject-matter of the agreement.' "

Thus, looking to the writing, the letter, standing alone, it will be readily observed that it fails to describe the lease; especially in the particulars of the terms thereof, or refer to it sufficiently to identify it without the aid of parol testimony as to operate as a new lease; therefore, insufficient to meet the requirements of the statute as a memorandum enforceable in this State, as applies to leases of land extending over a period of one year. Cantrell et al. v. Gerrard, Tex.Com.App., 240 S.W. 533. And the acceptance of rentals after discoverture by Mrs. Simmons does not, without more, ratify the lease void because defectively executed by Mr. Simmons during coverture. Ratification of a void lease arises by operation of law from acts of the parties made in compliance therewith. To comply with the statute of frauds, a written agreement for lease, or ratification of a lease, must state the terms and conditions upon which the lease or ratification was based.

In the case of Laird v. Laird, supra, the court pronounced the rule universally adopted by the Courts of this State [52 S. W.2d 1115]: "To comply with the requirement of the statute, a writing must contain the terms of the contract, and when it does not do so, or 'shows expresssly or inferentially that there are terms which it either does not state or does not clearly and sufficiently state' (27 C.J. p. 227, § 334), it is within the inhibition in the statute and not enforceable. See Cantrell v. Garrard (Tex. Com.App.) 240 S.W. 533 and 27 C.J. p. 279, § 336, where it is said: 'A written agreement for a lease, or memorandum thereof, must state the conditions upon which the lease is to be executed, and the terms which it is to contain. It must show the commencement and duration of the term of the lease.' It will be noted that while the time of the duration of the lease was specified, the time when it should commence was not. It will be noted, further, that it appeared from the face of the contract that it was subject to terms not only not clearly stated but not stated at all. Therefore it is plain enough, we think, the contract was not one on which appellant could maintain an action for either specific performance or for damages."

In Culver v. Haggard, 270 S.W. 846, 847, the Commission of Appeals, approved by the Supreme Court, quoted from Cumberland Coal & Iron Co. v. Sherman, 20 Md. 117, page 149: "Confirmation according to the books, must be a solemn and deliberate act, not fished out from loose expressions in a letter; * * * that the court will

watch it with the utmost strictness, and not allow it to stand but on the clearest evidence." It may seem that if Mrs. Simmons by parol intended by accepting the $600 a month to ratify all the terms and conditions of the lease made by her husband, such parol disclosure would not give appellee a legal right to hold the property as against appellant's demand to repossess it; or if the equities in the transaction predominated in favor of the lessee, equity will not prevail against statutory requirements that the lease shall be in writing. It is evident that Mrs. Simmons did not ratify the lease in writing within the purview of the law, hence not estopped to assert her legal rights.

The judgment of the trial court should be reversed and judgment rendered for appellant, declaring that appellee has no lease on her property and no right to occupy the same; and that appellant is entitled to a reasonable rental value of her property from and after October 1, 1948, the date on which she notified appellee to vacate the premises, together with legal interest.

I respectfully dissent.

On Rehearing and Motion to Certify.

CRAMER, Justice.

■ Appellant has made a strong motion for rehearing and to certify, and upon a review of the record we have concluded to write further herein. The record shows that the lease between John J. Simmons (now deceased) and the Clampitt Paper Company was not void as to John J. Simmons personally. If the title to the leased property was not in Simmons (now deceased) at the time the lease was made, he or his estate was and is liable to the Clampitt Paper Company for any loss it might sustain by reason of being dispossessed, because of his lack of title, by any third person. Avery & Sons' Plow Co. v. Kennerly, Tex.Com.App., 12 S.W.2d 140; Kolp v. Prewitt, Tex.Civ.App., 9 S.W.2d 490.

Maxwell Clampitt testified that he paid Mr. Simmons during his lifetime the sum of $1,016.67 per month covering both buildings leased; that he had a bill on the stationery of John J. Simmons covering "To February rent $1,016.67" on his desk at the time Mrs. Simmons first came to see him. He also testified as follows: "Mrs. Simmons came in with this young fellow and told me they had been unable to locate the lease in Mr. Simmons' desk and wanted me to pay her the money on the building at 1001 Broom Street by virtue of the fact this building was not in the estate; that the building on Griffin Street was in the estate and the money should go to the First National Bank, but the other building, she wanted the rental of $600.00 paid separately. We had just received a bill for $1016.67 a month for both buildings. I told Mrs. Simmons I was sure it would be all right but I would like her to give me a letter authorizing me to change it, because it might be two people might want the rent. I told her when she got that letter to bring it back to me and I would be glad to write the check out to her instead of the bank. She brought that in, rather this nephew, this Justice brought it in the next day, I believe the 4th, and I gave him the check, the first check at that time. Q. Now is this the bill that you received, dated January 30, 1948; is that the bill you had received? A. That is right. That is the last one. Q. That is dated January 30 and is on the stationery of John J. Simmons and says, 'To February rent, $1016.67?' A. Uh-huh."

Mrs. Simmons did not take the witness stand. There was no testimony controverting the above testimony of Mr. Clampitt. Mrs. Simmons, through her attorney, did introduce the deed to the property involved from John J. Simmons to her as her separate estate, dated long before the lease in question.

The record therefore establishes that John J. Simmons, deceased, at the time he signed the lease, knew the property was Mrs. Simmons' separate estate. It also shows that Mrs. Simmons, before she went to Mr. Clampitt, must have known there was a lease, or she would not have told Clampitt she "had been unable to locate the lease in Mr. Simmons' desk." The record also establishes that the lease was then shown her and after she looked it over, she demanded, in a written letter set out in our original opinion, that the $600 rent for February

be paid direct to her. The trial being to the court without a jury, we adhere to our conclusion that the trial court was justified under the circumstances in holding that Mrs. Simmons had ratified the lease made by her deceased husband and that the letter referred to satisfies the statute of frauds. And we here adopt the trial court's findings as our findings herein.

Motions for rehearing and to certify are both overruled.

BOND, C. .J, dissents.

BOND, Chief Justice (dissenting).

The judgment from which this appeal is prosecuted makes no mention of liability of appellant or the estate of John J. Simmons for any loss that might be sustained by Clampitt Paper Company because of lack of authority of Mr. Simmons to make the lease contract involved in this suit. The judgment of the court below was entered in favor of the Paper Company, determining and declaring that appellant is legally bound under the terms and conditions of the original lease, under declaration that Mrs. Simmons, subsequent to the death of her husband, by her acts and conduct, and letter quoted in the record, ratified and confirmed the otherwise nonenforceable lease contract.

The Clampitt Paper Company instituted this suit under the Uniform Declaratory Judgments Act to determine and declare merely the legal status of Mrs. Simmons in reference to the lease contract, contending that she had, after the death of her husband, adopted and ratified all of its terms and conditions; and, pending this action, she be enjoined from asserting any claim against the plaintiff for possession of said premises and from instituting any action at law, or suit in equity, against the plaintiff for the recovery of said premises, and for general relief and costs of suit. There is not a line in the pleadings or in the judgment of the court below, nor (it is pertinent to say) in the majority's original opinion, in reference to the liability of the defendant or the estate of John J. Simmons, and there is not a scintilla of evidence to support such declaration. And there is no contention in this appeal that the Paper Company sustained any loss or might sustain loss by being dispossessed of the lease because of Mr. Simmons' lack of authority to bind his wife. Such declaration by the majority that the estate of John J. Simmons is liable for any such loss is manifestly beside the record; thus, by its inclusion in the opinion on rehearing, reveals weakness in the conclusion of the majority that by Mrs. Simmons' acts and conduct she ratified the otherwise illegal lease contract involved in this suit; and the holding of the majority that the existing lease is a valid and subsisting lease to the premises. If the lease executed by Mr. Simmons is binding on Mrs. Simmons, as contended in pleadings of the plaintiff and sustained by the majority, it therefore is difficult to understand the declaration that the estate of John J. Simmons is liable for loss of the lease. I content myself on the record, adhering to my original dissent.