**2616 SOUTH LOOP L.L.C. and 2616 South Loop Building, L.P., Appellants**

**v.**

**HEALTH SOURCE HOME CARE, INC. and Arunee Pinwatana, Appellees.**

**No. 14–04–01089–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 31, 2006.

David Edward Castaneda, Houston, for appellants, for appellants.

Brian D. Womac, Houston, for appellees.

Panel consists of Justices FOWLER, EDELMAN, and GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

In this landlord-tenant dispute, appellees Health Source Home Care, Inc. and Arunee Pinwatana d/b/a Atrium Deli (collectively, "the Tenants") filed suit against appellants 2616 South Loop, L.L.C. and 2616 South Loop Building, L.P. (collectively, "the South Loop Companies") seeking a declaratory judgment construing their leases, damages for breach of contract, attorneys' fees, and interest. The South Loop Companies denied that the leases were enforceable, asserted alternative counterclaims for breach of contract or quantum meruit damages, and also sought declaratory relief. After a non-jury trial, the trial court dismissed the South Loop Companies' counterclaims, entered judgment in favor of the Tenants for actual damages, attorneys' fees, and interest, and issued findings of fact and conclusions of law. We hold the leases do not bind the South Loop Companies, and therefore reverse and remand this cause for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Tenants leased office space in a building located at 2616 South Loop ("the Property") in Houston, Texas. Health Source contracted to lease a suite on the Property through December 31, 2003, and Pinwatana contracted to lease space

through January 3, 2008.[1] Both leases identify Quad Atrium Realty as the lessor, and contain provisions requiring that all notices to the lessor be sent to Quad Atrium Realty at its offices on the Property. The leases were signed by D.H. Virani, who was identified in the leases as the property manager for Quad Atrium Realty. However, at the time the Tenants signed their respective leases, the Property was owned by Quad Atrium Group Limited Partnership ("Quad L.P.").

In June 2002, Boxer Property Management Corporation ("Boxer"), the agent of 2616 South Loop, L.L.C. ("South Loop L.L.C."), negotiated the purchase of the Property by Boxer or its assignee. Boxer assigned the purchase and sale agreement to South Loop L.L.C., and after South Loop L.L.C. completed the purchase, Boxer managed the Property.

The day after the sale, Boxer notified the Tenants that South Loop L.L.C. now owned the Property, and informed the Tenants that their "month-to-month" leases were terminated "effective immediately." The Tenants were also told they had thirty days to vacate the Property unless they entered into new leases with Boxer. Boxer subsequently sent the Tenants notices of default, demands for payment of increased rent, and demands that they vacate the Property. Both Tenants insisted they had valid leases and refused to vacate.

In December 2002, South Loop L.L.C. sold the Property to 2616 South Loop Building, L.P. ("South Loop Building"). Although it no longer held title to the Property, South Loop L.L.C. filed separate forcible detainer actions in a Harris

---

1. The lease identifies "Atrium Deli" as the lessee, and Pinwatana as the owner of Atrium Deli.

County justice court against Health Source and Pinwatana[2]. The justice court found in favor of the Tenants, but ruled that the Tenants were not entitled to recover damages or attorneys' fees. None of the parties appealed the justice court's judgment.

One week after the justice court ruled, the Tenants filed the present suit against South Loop L.L.C. in Harris County Civil Court at Law No. 2. The Tenants sought a declaratory judgment that South Loop L.L.C. and South Loop Building are bound by the leases and that the Tenants are not in default. In addition, the Tenants sought damages for breach of contract and wrongful eviction, attorneys' fees, and interest. The Tenants subsequently added South Loop Building as a defendant, and alleged that South Loop Building was "the mere continuation or alter ego of [South Loop L.L.C.]." The Tenants asked the trial court to impose South Loop L.L.C.'s liability on South Loop Building, or alternatively, to find that South Loop Building had assumed the liabilities of South Loop L.L.C. Both South Loop L.L.C. and South Loop Building denied the enforceability of the Tenants' written leases, and asserted counterclaims for quantum meruit damages and declaratory relief. South Loop L.L.C. and South Loop Building also asserted alternative claims for breach of contract, contending that (a) Heath Source breached its lease by overstaying the lease period without paying specified "holdover" rent, and (b) Pinwatana breached her lease by operating a deli on the leased premises in violation of a contract provision requiring that the area be used only as office space.

The trial court entered a judgment in favor of the Tenants, dismissed the South Loop Companies' counterclaims, and issued fifteen findings of fact and six conclusions of law. In its conclusions of law, the trial court found: (1)"the leases are valid and binding on the parties"; (2) South Loop L.L.C. breached the leases with the Tenants "by attempting to terminate the subject leases and by filing the eviction proceedings"; (3) the Tenants "are not in default on the terms of their respective leases"; and (4) South Loop L.L.C.'s "action of filing the eviction proceeding against [the Tenants] was a violation of the terms of the subject leases." The trial court also found the Tenants had "incurred damages resulting from the Defendant's eviction proceeding in the total amount of $2,248.17, which takes into consideration the attorneys' fees incurred due to the eviction proceeding." Thus, in addition to attorneys' fees for the instant suit, the trial court awarded Health Source and Pinwatana $2,248.17 each in actual damages together with prejudgment interest.[3]

---

**2.** The forcible detainer action against Pinwatana was brought against her business name, Atrium Deli.

**3.** The Tenants requested attorneys' fees for prosecuting this suit pursuant to Chapters 37 and 38 of the Civil Practice and Remedies Code, but the judgment does not identify the provision under which the award was made. Although the South Loop Companies contend the Tenants failed to meet the presentment requirements of Tex. Civ. Prac. & Rem.Code Ann. § 38.002 (Vernon 1997), it is not clear if this argument is intended to encompass all the attorneys' fees awarded by the trial court, or only the attorneys' fees incurred in the forc-

ible detainer action. The South Loop Companies do not contend the trial court abused its discretion in awarding the fees as permitted by Tex. Civ. Prac. & Rem.Code Ann. § 37.009 (Vernon 1997) ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."). However, the trial court's award of attorneys' fees may be reconsidered on remand in light of our holding today. *See Cole Chem. & Distrib., Inc. v. Gowing,* No. 14–03–01092–CV, —— S.W.3d ——, 2005 WL 692202, at *4 (Tex.App.-Houston [14th Dist.] March 15, 2005, no pet.) (remanding for reconsideration of attorneys'

## II. ISSUES PRESENTED

In seven issues, the South Loop Companies challenge the legal and factual sufficiency of the evidence supporting: (1) the trial court's "implicit" finding that the leases were conveyed to the South Loop Companies; (2) the trial court's finding that the South Loop Companies breached the Tenants' covenant of peaceful and quiet enjoyment of the leased premises; (3) the trial court's finding that the leases were valid and binding on the parties; (4) the trial court's failure to find that the Tenants are in breach of the leases; (5) the trial court's award of attorneys' fees from the forcible detainer action as actual damages in the present action; (6) the trial court's "implicit" finding that South Loop L.L.C.'s liabilities were transferred to or assumed by South Loop Building; and (7) the trial court's dismissal of the Landlord's quantum meruit claims.

## III. STANDARDS OF REVIEW

### A. Findings of Fact

■ In reviewing a trial court's findings of fact for legal and factual sufficiency of the evidence, we apply the same standards we apply in reviewing the evidence supporting a jury's answer. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994). When the appellate record contains a reporter's record, as it does in this case, findings of fact are not conclusive on appeal if a contrary fact is established as a matter of law or if there is no evidence to support the finding. *See Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 257 (Tex.App.-Houston [14th Dist.] 2003, pet denied).

### 1. Legal Sufficiency

When conducting a legal sufficiency review, we credit evidence supporting the

fees because the appellate court's disposition substantially altered the amount of prevailing

judgment if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005). We may sustain a legal sufficiency, or no-evidence, point if the record reveals one of the following: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence established conclusively the opposite of the vital fact. *See Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex.1998). If more than a scintilla of evidence exists, it is legally sufficient. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex.2001). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence. *Id.* at 782–83.

### 2. Factual Sufficiency

■ When conducting a factual sufficiency review, we consider all of the evidence to determine if the finding is so weak or if the evidence to the contrary is so overwhelming that it should be set aside and a new trial ordered. *Burlington N. & Santa Fe Ry. v. S. Plains Switching, Ltd.*, 174 S.W.3d 348, 354 (Tex.App.-Fort Worth 2005, pet. denied). Findings may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). An appellate court must also clearly state why the trial court's finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust.

party's recovery).

*See Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996) (per curiam).

## B.   Conclusions of Law

■   We review the trial court's conclusions of law de novo. *Smith v. Smith,* 22 S.W.3d 140, 149 (Tex.App.-Houston [14th Dist.] 2000, no pet.). When performing a de novo review, the reviewing court exercises its own judgment and redetermines each legal issue. *Quick v. City of Austin,* 7 S.W.3d 109, 116 (Tex.1998). We will uphold conclusions of law on appeal if the judgment can be sustained on any legal theory the evidence supports. *Waggoner v. Morrow,* 932 S.W.2d 627, 631 (Tex.App.-Houston [14th Dist.] 1996, no writ). Incorrect conclusions of law do not require reversal if the controlling findings of fact support the judgment under a correct legal theory. *Id.*

## IV.   ANALYSIS

In their third issue, the South Loop Companies challenge the trial court's conclusion that the parties are bound by valid leases. Because this issue is potentially dispositive, we begin by reviewing this conclusion of law and the relevant findings of fact that support the conclusion.

## A.   The Leases Do Not Bind the South Loop Companies.

The trial court's legal conclusion that "the subject leases are valid and binding on the parties ..." is a controlling issue of law, and rests on the trial court's factual findings that (a) Quad Atrium Realty executed the leases "as [the] duly authorized agent" for the Property's owner, Quad L.P.; (b) the South Loop Companies assumed the leases with the purchase of the Property; and (c) South Loop L.L.C. conveyed the leases to South Loop Building.[4] According to the South Loop Companies, the evidence at trial established that the leases were not executed on behalf of Quad L.P., but were instead executed by D.H. Virani as property manager for Quad Atrium Realty. The South Loop Companies further contend there is no evidence that Virani or Quad Atrium Realty were authorized to act on behalf of Quad L.P. In addition, the South Loop Companies argue there is no evidence the leases were conveyed to or assumed by Quad L.P. or its successors in interest, the South Loop Companies. Thus, the South Loop Companies contend the leases do not bind them because the leases were not conveyed in accordance with the Statute of Conveyances and the Statute of Frauds. Specifically, the Statute of Conveyances requires that "a conveyance of an ... estate for more than one year, in land and tenements, must be in writing and must be subscribed and delivered by the conveyor or by the conveyor's agent authorized in writing." TEX. PROP.CODE § 5.021 (Vernon 2004). Its contract law counterpart, the Statute of Frauds, requires a lease of real estate for a term of longer than one year to be in writing and "signed by the person to be charged with the promise ... or by someone lawfully authorized to sign for him." TEX. BUS. & COM.CODE § 26.01(a)(2) (Vernon Supp.2005).

■   A lessor may validly lease property to another, despite the fact that the title to the property is in a third person, if the lessor lawfully possesses the property. *Texas City Dike & Marina, Inc. v. Sikes,* 500 S.W.2d 953, 956 (Tex.Civ.App.-Houston [1st Dist.] 1973, writ ref'd n.r.e.) (hold-

---

4.   The South Loop Companies challenge these factual findings in their first issue. Specifically, the South Loop Companies argue that "the court's ruling that support [sic] [the Ten-

ants'] claims that the purported leases were conveyed to [the South Loop Companies] is legally and factually insufficient."

ing that lessor was estopped to deny that lessee leased a parking area where the lessor did not hold title to the property at the inception of the lease but the landowner acknowledged the existence of the lease in writing, and the lessor subsequently acquired title, acknowledged the validity of the lease in writing, and continued to accept rental payments).[5] In such a case, the lessee may enforce the lease against the lessor. *See Simmons v. Clampitt Paper Co.*, 223 S.W.2d 792, 799 (Tex.Civ.App.-Dallas 1949, writ ref'd n.r.e.) ("If the title to the leased property was not in [lessor] at the time the lease was made, [lessor] was and is liable to the [lessee] for any loss it might sustain by reason of being dispossessed, because of his lack of title, by any third person."). But, this does not necessarily mean that the lessee can enforce the lease against the property owner. Although the lessee "may have had a subjective, good faith belief" that the lessor was the owner or an agent of the owner, this is not enough to create an agency relationship between the lessor and the property owner that binds the owner to the lessor's agreement. *See Coker v. Cramer Fin. Group, Inc.*, 992 S.W.2d 586, 595 (Tex. App.-Texarkana 1999, no pet.). In the absence of the owner's ratification of the lease or the lessor's actual or apparent authority to act on the owner's behalf, there is no basis on which to enforce the lease against the property owner.

Here, the Tenants failed to produce any document in which Quad L.P. authorized Virani or Quad Atrium Realty to execute the leases on Quad L.P.'s behalf, instead arguing, "It is an obvious proposition that when [the South Loop Companies] purchased the Property, [their] purchase was subject to the existing leases of the Prop-

erty." This contention presupposes that the leases were binding on the prior owner of the property, Quad L.P., and were conveyed to South Loop L.L.C. at the time of purchase. The Tenants apparently presume that Quad Atrium Realty had actual or apparent authority to execute the leases on behalf of Quad L.P.; alternatively, the Tenants presume Quad L.P. ratified the leases.

■ Actual authority includes both express and implied authority and usually denotes the authority a principal (1) intentionally confers upon an agent, (2) intentionally allows the agent to believe he possesses, or (3) by want of due care allows the agent to believe he possesses. *Coker v. Cramer Fin. Group, Inc.*, 992 S.W.2d 586, 594 (Tex.App.-Texarkana 1999, no pet.). Here, the Tenants presented no evidence that Quad L.P. authorized Virani or Quad Atrium Realty—orally, in writing, or through a want of due care—to act as its agents. Thus, there is no support for the Tenant's presumption that Quad Atrium Realty or Virani had actual authority to bind Quad L.P.

■ The essential elements required to establish apparent authority are: (1) a reasonable belief in the agent's authority; (2) generated by some holding out or neglect of the principal; and (3) justifiable reliance on the authority. *Garza v. Williams Bros. Constr. Co., Inc.*, 879 S.W.2d 290, 294 (Tex.App.-Houston [14th Dist.] 1994, no writ). A court may consider only the conduct of the principal leading a third party to believe that the agent has authority in determining whether an agent has apparent authority. *NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 953 (Tex. 1996). "The principal must have affirma-

---

**5.** None of the parties presented evidence showing whether Quad Atrium Realty lawful-

ly possessed the Property.

tively held out the agent as possessing the authority or must have knowingly and voluntarily permitted the agent to act in an unauthorized manner." *Id.* In this case, the Tenants presented no evidence that Quad L.P. affirmatively represented that Quad Atrium Realty or Virani were its agents, or that Quad L.P. knowingly and voluntarily permitted them to act in an unauthorized manner. In support of their presumption that Quad L.P. authorized or ratified the leases executed by Quad Atrium Realty, the Tenants rely on three documents and one assertion.

▮▮▮▮ First, the Tenants point out that the deed conveying the Property to South Loop L.L.C. states that the conveyance is subject to the "[r]ights of tenants in possession, as tenants only, under unrecorded lease agreements." This language, however, merely states that the Property is conveyed to South Loop L.L.C. subject to the rights of the Tenants as set forth in the leases. The language does not change the fact that the leases continue to define the Tenants' rights. Although the Tenants' argument presupposes that the leases convey rights to the Tenants that are enforceable against Quad L.P., neither the leases nor the deed perform an essential step necessary to bind Quad L.P. in that the documents do not (a) acknowledge Quad Atrium Realty or Virani as Quad L.P.'s agent, (b) acknowledge that the leases were executed by Virani and Quad Atrium Realty on Quad L.P.'s behalf, (c) ratify the leases, or (d) assign the leases to Quad L.P. *See Texas City Dike & Marina, Inc. v. Sikes,* 500 S.W.2d 953, 956 (Tex.Civ. App.-Dallas 1973, writ ref'd n.r.e.) (holding that lessor was estopped to deny that lessee leased a parking area where the lessor did not hold title to the property at the inception of the lease but the landowner acknowledged the existence of the lease in writing, and the lessor subsequently acquired title, acknowledged the validity of the lease in writing, and continued to accept rental payments, thereby ratifying the lease). Hence, any rights that the Tenants possess under the leases may be asserted against Quad Atrium Realty, but not against Quad L.P. *See Simmons,* 223 S.W.2d at 799.

The Tenants next point out that Quad L.P. and South Loop L.L.C. executed an "Assignment and Assumption of Tenant Leases" in which Quad L.P. states "[Quad L.P.] is the owner of the lessor's interest in those certain leases … identified on Exhibit 'B'" and assigns the leases to South Loop L.L.C. However, as the Tenants concede, no Exhibit "B" was attached to the Assignment.

The Tenants also argue that:

[the South Loop Companies] have relied on a rent roll created by Quad Atrium Realty as a basis for determining the status of existing leases at the Property which was introduced and testified about at trial. This clearly shows that [the South Loop Companies] did in fact recognize Quad Atrium Realty as an authorized agent for [Quad L.P.]

The "rent roll" is a spreadsheet bearing the heading "Quad Atrium Realty Rent Roll As On 5–31–2002." It indicates that Pinwatana has a month-to-month lease [6] and Health Source's lease expires on May 31, 2002. But, the document makes no reference to Quad L.P.

Finally, the Tenants contend Quad Atrium Realty is Quad L.P.'s general partner, and thus, was authorized to and did bind Quad L.P. to the leases. However, no

---

**6.** The rent roll contains columns labeled "Tenant," "Suite No.," "Sq. Ft.," "Expires," "Security Deposit," and "Rent." Where "Atrium Deli" is identified in the "Tenant" column, the entry "M/M" appears in the "Expires" column.

evidence was introduced at trial in support of this argument. The Assignment states that "Quad Atrium Corp." is Quad L.P.'s "sole general partner," and the deed identifies "Quad Atrium Realty Corporation" as Quad L.P.'s "general partner." Thus, the record contains conflicting evidence of the name of the general partner, but contains no evidence that Quad Atrium Realty is the same entity as "Quad Atrium Corp." or "Quad Atrium Realty Corporation." Even assuming that Quad Atrium Realty is the general partner in Quad L.P., the leases do not indicate that Quad Atrium Realty executed the leases on behalf of the partnership, rather than on its own behalf. *See First State Bank of Riesel v. Dyer*, 151 Tex. 650, 653, 254 S.W.2d 92, 94 (Tex.1953) (" 'A partnership may be held responsible for obligations executed in the name of an individual partner where such name has been adopted as the firm name or where the partners have consented to use of his name in partnership matters; but use of an individual name raises a presumption that the transaction is an individual and not a firm matter.' ") (quoting 68 C.J.S., Partnership, s 147b, p. 582); 57 Tex. Jur. 3D *Partnership* § 102 (1997) ("Every partner is an agent of the partnership for purpose of its business; and the act of every partner, including the execution *in the partnership name* of any instrument, for apparently carrying on in the usual way the business of the partnership, binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the lack of authority.") (emphasis added).

We conclude that there is no evidence that Quad L.P. assigned the leases executed by Quad Atrium Realty to the South Loop Companies. The leases identify Quad Atrium Realty as the lessor, and contain no reference to Quad L.P. The Tenants endorsed their rent payment checks to Quad Atrium Realty, rather than to Quad L.P., and delivered them to Virani, the property manager for Quad Atrium Realty. The Tenants produced no evidence that Quad L.P. authorized Virani or Quad Atrium Realty to act as its agent. Moreover, the Tenants presented no evidence that Quad Atrium Realty executed the leases on behalf of Quad L.P., rather than on its own behalf. Finally, there is no evidence that Quad Atrium Realty conveyed or assigned the Tenants' leases to Quad L.P. In the absence of evidence that (a) Virani and Quad Atrium Realty were Quad L.P.'s authorized agents, (b) Virani and Quad Atrium Realty executed the leases on behalf Quad L.P., or (c) Quad L.P. or its authorized agents conveyed or assigned the leases to the South Loop Companies, the trial court erred in concluding the leases were valid and binding on the South Loop Companies.

We sustain the South Loop Companies' first and third issues.

**B. The South Loop Companies Are Not Liable to the Tenants**

Our conclusion that the leases do not bind the South Loop Companies dictates our resolution of the South Loop Companies' remaining issues.

In their second issue, the South Loop Companies challenge the trial court's finding that they breached the Tenants' covenant of peaceful and quiet enjoyment of the leased premises. Because the written leases do not bind the South Loop Companies, there is no evidence to support the trial court's finding that the South Loop Companies breached the leases.[7]

---

7.  A breach of the covenant of quiet enjoyment     requires an eviction, actual or constructive,

Thus, we sustain the South Loop Companies' second issue.

In their fourth issue, the South Loop Companies claim the trial court erred in failing to find that the Tenants breached specific provisions of their respective leases. Having concluded that the leases are not binding, we must also conclude the trial court did not err in failing to find the Tenants breached the leases. We overrule the South Loop Companies' fourth issue.

■■■ The South Loop Companies argue in their fifth issue that the trial court erred in awarding the Tenants the attorneys' fees incurred in the forcible detainer action as actual damages in the present action because (a) the leases are not binding; (b) if the leases are binding, the South Loop Companies did not breach the leases by filing the forcible detainer action;[8] (c) the Tenants' attempt to recover attorneys' fees incurred in the forcible detainer action constitutes an impermissible collateral attack on the judgment of the justice court; and (d) the Tenants' claim for prior attorneys' fees is barred by res judicata. Because we have concluded the leases are not binding, the South Loop Companies did not breach the leases, and therefore, the Tenants are not entitled to recover actual damages.[9] We sustain the South Loop Companies' fifth issue, and reverse the trial court's award of actual damages and interest.

In their sixth issue, the South Loop Companies argue the trial court "erred when it implicitly found that any liabilities of [South Loop L.L.C.] were transferred or assumed by [South Loop Building]" because the evidence is factually and legally insufficient to support such a finding. Although the Tenants allege that South Loop Building is the alter ego of South Loop L.L.C., the trial court made no findings of fact or conclusions of law regarding the alter ego claim. Nevertheless, the trial

---

brought about by the acts of the landlord, those acting for the landlord, or those acting with the landlord's permission. *Holmes v. P.K. Pipe & Tubing, Inc.*, 856 S.W.2d 530, 539 (Tex.App.-Houston [1st Dist.] 1993, no writ); *see also Lazell v. Stone*, 123 S.W.3d 6, 12 n. 1 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) ("The elements of a breach of the warranty of quiet enjoyment are the same as the elements in a constructive eviction claim."). The essential elements of constructive eviction are: (1) an intention on the part of the landlord that the tenant shall no longer enjoy the premises; (2) a material act by the landlord that substantially interferes with the tenant's intended use and enjoyment of the premises; (3) the act permanently deprives the tenant of the use and enjoyment of the premises; and (4) the tenant abandons the premises within a reasonable time after the commission of the act. *Holmes*, 856 S.W.2d at 539. Here, no evidence was presented that the South Loop Companies deprived the Tenants of the use and enjoyment of the premises or that the Tenants abandoned the Property. To the contrary, the uncontroverted evidence establishes that Health Source remained on the premises even after the lease would have expired by its own terms, and there is no evidence that Atrium Deli ever abandoned the premises.

8. The trial court did not identify the provision of the leases that prohibited the South Loop Companies from filing a forcible detainer action or attempting to terminate the leases; however, all parties argue the trial court found the South Loop Companies breached a covenant of quiet enjoyment.

9. We do not imply that if there had been a breach, the Tenants could recover the attorneys' fees from the forcible detainer action as actual damages in this suit. The South Loop Companies are correct that the Tenants' efforts to recover those fees are an impermissible collateral attack on the prior judgment, and recovery is now barred by res judicata. *See Neller v. Kirschke*, 922 S.W.2d 182, 185–86 (Tex.App.-Houston [1st Dist.] 1995, writ denied); *but see Shotwell v. Crier*, 216 S.W. 262, 263 (Tex.Civ.App.-Fort Worth 1919, writ dismissed w.o.j.) (holding that party to a forcible detainer action who did not seek recovery of attorneys' fees and expenses could recover those costs in a subsequent suit).

court found that South Loop L.L.C. "conveyed the subject [B]uilding and leases to [South Loop Building]" and concluded that "the subject leases are valid and binding on the parties including [South Loop Building]." Moreover, the trial court entered judgment against both South Loop Companies. Because we conclude the leases are not enforceable against the South Loop Companies, we necessarily conclude that the South Loop Companies are not liable to the Tenants for the alleged breach of the leases.[10] We therefore sustain the South Loop Companies' sixth issue.

### C. The South Loop Companies' Quantum Meruit Counterclaim

■■■ In their last issue, the South Loop Companies contend the trial court erred in dismissing the South Loop Companies' counterclaims for quantum meruit. The trial court found the Tenants "have paid all the rent owed *under the terms of the respective leases.*" (emphasis added). But, because there is no express agreement between the parties, the amount the Tenants owe to the South Loop Companies is determined by quantum meruit, rather than the terms of the non-binding leases. *See Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex.1992) ("Quantum meruit is an equitable theory of recovery which is based on an *implied* agreement to pay for benefits received.") (emphasis added).

■■■ To recover under quantum meruit, the claimant must establish that (1) valuable services were rendered or materials furnished; (2) to the party sought to be

charged; (3) which were accepted by the party sought to be charged; and (4) under circumstances that reasonably notified the recipient that the claimant expected to be paid for the services or materials. *Id.* The evidence is uncontroverted that the Tenants received and accepted the use of the Property and received written demands for payment of market rental rates in return. The South Loop Companies also presented evidence that the Tenants paid rent at less than the market rate; however, the trial court found the written leases to be binding, and therefore dismissed the South Loop Companies' counterclaim without determining the reasonable rental value of the leased premises. *See Hudson v. Cooper*, 162 S.W.3d 685, 688 (Tex.App.-Houston [14th Dist.] 2005, no pet.) ("The measure of recovery for quantum meruit is the reasonable value of the services.").

Because the South Loop Companies presented evidence on all elements necessary to sustain their quantum meruit claim, and because the parties are not bound by the rental value stated in the leases, the trial court erred in dismissing the South Loop Companies' counterclaim. Thus, we sustain the South Loop Companies' seventh issue, reverse the judgment dismissing the South Loop Companies' counterclaim, and remand the case.[11]

### V. CONCLUSION

We hold the evidence is legally insufficient to support the following findings of fact and their corollary conclusions of law: (1) the leases were executed by a duly authorized agent of the Property owner; (2) the leases were conveyed to the South

---

10. As previously discussed, however, the Tenants presented no evidence that the leases were conveyed from Quad Atrium Realty to Quad L.P.; from Quad Atrium Realty or Quad L.P. to South Loop L.L.C.; or from any of these entities to South Loop Building.

11. We do not imply that the reasonable value of the leased premises exceeds the rent paid by the Tenants; rather, we remand the case to the trial court to make this factual determination.

Loop Companies; (3) the leases are valid and enforceable agreements assumed by the South Loop Companies with the purchase of the Property; (4) the leases are valid and enforceable against the South Loop Companies; (5) the Tenants incurred damages resulting from the forcible detainer action; (6) South Loop L.L.C. breached the leases by attempting to terminate the leases and by filing the forcible detainer action; and (7) the Tenants are entitled to recover actual damages and interest. We further hold the trial court erred in dismissing the South Loop Companies' claims to recover the value of the leased premises in quantum meruit.

We reverse the trial court's judgment and remand this cause for further proceedings consistent with this opinion.