COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



PROTECT ENVIRONMENTAL
SERVICES, INC.,

§

§

Appellant/Cross-Appellee,

§

v.

§

NORCO CORPORATION,

§

Appellee/Cross-Appellant.

§

§

No. 08-11-00303-CV

Appeal from the

County Court At Law Number One

of Tarrant County, Texas

(TC# 2007-056875-1)

## **O P I N I O N**

Protect Environmental Services, Inc. ("Protect" or "Appellant/Cross-Appellee"), in a single issue, asserts that the trial court abused its discretion in awarding a reduced portion of the attorney's fees and expenses Protect incurred. Norco Corporation ("Norco" or "Appellee/Cross-Appellant"), in a sole issue, alleges error by the trial court in denying Norco's motion for new trial alleging legal and factual insufficiency on, *inter alia*, the issues of actual and apparent authority.[1] For the reasons set out below, we affirm.

### **PROCEDURAL BACKGROUND**

Protect filed suit seeking damages for, *inter alia,* breach of contract based on actual and

---

[1] This case was transferred from the Second Court of Appeals to this Court pursuant to a docket equalization order entered by the Texas Supreme Court. *See* TEX.GOV'T CODE ANN. § 73.001 (West 2005). We have applied precedent of the Fort Worth Court of Appeals. *See* TEX.R.APP.P. 41.3.

apparent authority. Norco answered with a general denial of all allegations. A bench trial was held on May 23, 2011, at which the trial court requested additional briefing on the issues of actual and apparent authority and ratification. The trial court issued a letter ruling in favor of Protect and signed a final judgment to that effect. The trial court awarded Protect damages of $11,616.34, court costs, pre-judgment interest, and attorney's fees of $3,500, for a total judgment of $18,601.14. Neither party requested, and the trial court did not prepare, findings of fact and conclusions of law.

Norco filed a motion for new trial arguing, the evidence was legally and factually insufficient on, *inter alia*, the issues of actual and apparent authority, while Protect filed a motion for new trial on the issue of attorney's fees. The motions were overruled by operation of law and both parties appealed.

## FACTUAL BACKGROUND

Shortly after midnight on June 14, 2007, Raymond Bailey[2] ("Bailey"), an owner-operator truck driver working as an independent contractor for Norco, was picking up a load at the VersaCold cold storage facility in Fort Worth when his truck was stolen. Bailey's truck was found a short while later in Lake Worth, where it was spilling diesel fuel into the water.

According to Bailey, he first realized that the truck was stolen approximately thirty minutes after he arrived at VersaCold at 11:45 p.m. Bailey called 911 at 12:12 a.m. His next call, using the VersaCold phone line, was to Deborah Burroughs ("Burroughs"), the Norco dispatcher on-duty, to inform Norco of the theft of the truck. According to Bailey's cell phone records, he called Norco again at 1:18 a.m., 2:06 a.m., 7:05 a.m., and 10:48 a.m. Bailey did not

---

[2] Bailey represented himself at trial, and was nonsuited at the conclusion of the evidence.

specifically recall when the police took him to where the truck was found, but guessed it was between 1:30 a.m. to 2 a.m. Bailey initially stated Protect arrived at that location about 3 to 3:30 a.m., but later testified Protect had arrived around 2 a.m. Bailey testified that neither he nor Burroughs had called Protect to the scene. Richard Cameron ("Cameron"), President and CEO of Protect, presented Bailey with a contract. The contract was for Protect's environmental clean-up services. The environmental clean-up services were to "contain, control and clean up a release of hazardous or regulated materials," specifically, diesel fuel and other liquids released from the tractor-trailer after it had been abandoned in Lake Worth. Bailey was told for the environmental clean-up to begin, the contract needed to be signed. Bailey testified Cameron told him the contract was between Protect and Norco. Bailey's testimony regarding that evening was not exact. He initially stated he had called Norco at approximately 2:06 a.m. and Burroughs had "verbally told me to do whatever it took to take care of it." He subsequently signed the contract for the environmental clean-up services Cameron had provided to him. Bailey also acknowledged he was not sure of the exact time when Protect arrived, and was unsure about what he spoke to Burroughs about in the 2:06 a.m. call, but he definitely signed the contract prior to the 7:05 a.m. call.

Bailey understood he had signed the contract "on behalf of Norco, as a representative of Norco." Further, he believed he had authority to enter into the contract and bind Norco, but he did not specifically tell Cameron he had such authority. Bailey thought the independent contractor agreement[3] he had signed with Norco authorized him to bind Norco. Bailey testified he believed he had this authority because:

---

[3] The independent contract agreement was not introduced as an exhibit at trial and was not included in the record

3

[F]rom 2005 when I leased on with the company, I had been the whole time picking up shipments and doing everything that had Norco's name on it and my name on it as well under the pretense that I'm a representative of Norco.

And whenever I put signs on the side of my truck that says Norco, I have to represent this company.[4]

Bailey also testified, in the three years since the incident, Norco never told him that he was responsible for the contract or that they were not responsible for the contract.

Cameron testified when he arrived at the truck's location, at approximately 2:15 to 2:30 a.m., he initially asked Bailey if he was "Mr. Norco." After discovering Bailey was not, he told Bailey, Protect would need him to contact Norco and obtain approval before Protect could begin the environmental clean-up.[5] Cameron then observed Bailey make a phone call. After Bailey finished the phone call, he then told Cameron he had authorization to sign the clean-up contract. Cameron further testified had Bailey told him that he did not have authorization to sign the contract for Norco, Protect would not have begun clean-up operations. Bailey signed the contract for Norco believing he had the authority to do so. Protect performed the services and completed the work required in the contract that night.

Mindy Stanley ("Stanley"), a Protect employee, testified she both faxed and mailed the signed contract and invoice to Norco on the morning of June 15, 2007, after the environmental work was completed. The invoice charged Norco the cost of the clean-up which totaled $11,616.34. Norco did not respond to the invoice or contract that was mailed and faxed to them. The invoice was not paid and Norco did not assert Bailey's lack of authority as the basis for

---

before us.

[4] Cameron took pictures of the truck at the scene which showed Norco signs on the truck.

[5] Cameron testified Protect does not enter into contracts with the drivers of trucks, as the expenses are usually more than an individual driver can pay, so Protect contracts only with the trucking company or transportation company.

non-payment. Norco's silence and non-payment prompted Protect to send reminder letters regarding the payment of the invoice. Stanley also placed several follow-up calls to Norco attempting to secure payment of the invoice, even speaking to the safety director on occasion, but to no avail, the invoice remained unpaid without any explanation. Stanley testified up until September 21, 2007, when the lawsuit was first filed, Norco made no attempt to either pay or dispute the invoice or the contract signed by Bailey. Stanley testified Norco never advised her they were refusing to pay the invoice because Bailey did not have authority to enter into the contract on their behalf.

At trial, Burroughs testified that she received the first call from Bailey a little after midnight advising the truck had been stolen. Bailey's second call came about an hour later explaining the police had arrived and were making a report. The third call from Bailey was shortly after 2 a.m. informing her that the truck had been recovered. Bailey told Burroughs he was going to let her know what was happening. After Bailey's initial call, Burroughs left voice mails for both the president and the safety director of Norco. Burroughs testified she arrived at work about 7 a.m. that morning. According to Burroughs, Bailey called her at work telling her Protect was going to clean up the fuel and oil left by the stolen truck in the lake. Burroughs testified between 2 a.m. and when she arrived at the office, she never spoke to or authorized Bailey to bind Norco to the Protect contract. Further, she said no dispatcher had the authority to authorize Bailey to enter into such a contract on behalf of Norco. Burroughs never spoke to anyone at Protect. When questioned by Bailey at trial, Burroughs testified about the procedures drivers perform in picking up loads assigned to them by Norco, including the fact drivers sign bills of lading and those bills are signed in the driver's name.

5

Protect offered undisputed evidence of their attorney's fees and expenses through both exhibits and a brief narrative of Nicholas Nuspl ("Nuspl"), Protect's counsel. Nuspl testified the reasonable attorney's fees and expenses Protect incurred were $8,924.82, and he anticipated there would be fees of $2,500 for each level of appeal.

## DISCUSSION

Protect asserts the trial court abused its discretion in awarding only a portion of the undisputed and uncontradicted attorney's fees and expenses Protect incurred. Norco alleges error by the trial court in denying Norco's motion for new trial alleging legal and factual insufficiency on, *inter alia*, issues of actual and apparent authority. We will address Norco's issue first.

### Norco's Appeal

#### Sufficiency of the evidence and denial of motion for new trial

In its sole issue, Norco contends that the trial court erred in denying Norco's motion for new trial on the issues of actual and apparent authority, ratification, and *quantum meruit*. Norco contends the evidence on the facts presented is legally and/or factually insufficient to support a judgment in favor of Protect on the issues of actual or apparent authority. Norco alleges Protect's sole reliance of Bailey's belief and representation he was an agent of Norco was factually and legally insufficient to establish actual or apparent authority.[6] Norco asserts the trial court erred in failing to grant a new trial because of the lack of evidence that Bailey had actual or apparent authority to bind Norco or alternatively, the trial court's rulings is against the great weight and

---

[6] Norco also contends that Protect failed to affirmatively plead claims for either *quantum meruit* or ratification, so therefore, waived those claims.

6

preponderance of the evidence.[7]

We review a trial court's denial of a motion for new trial for abuse of discretion. *See Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009)(reviewing a trial court's refusal to grant a motion for new trial for abuse of discretion); *In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006). The test for an abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but "whether the court acted without reference to any guiding rules and principles." *Cire v. Cummings*, 134 S.W.3d 835, 839 (Tex. 2004). The trial court's ruling should be reversed only if it was arbitrary or unreasonable. *Id.*

Norco references portions of the trial court's letter ruling as findings, however, it is well settled law that letter rulings do not constitute formal findings of fact. *Cherokee Water Co. v. Gregg Cnty. Appraisal Dist.*, 801 S.W.2d 872, 878 (Tex. 1990); *Castillo v. August*, 248 S.W.3d 874, 880 (Tex.App.--El Paso 2008, no pet.). Because of this principle, we determine the court below did not enter any findings of fact in the instant case. *See Cherokee Water Co.*, 801 S.W.2d at 878; *Castillo*, 248 S.W.3d at 880.

In a trial, to the court, in which no findings of fact or conclusions of law are filed, the trial court's judgment implies all findings of fact necessary to support it. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 871-72 (Tex. 2010). When a reporter's record is filed, however, these implied findings are not conclusive, and an appellant may challenge them by raising both legal and factual

---

[7] In its brief, Norco presents its argument initially as error by the trial court in denying the motion for new trial, then argues the judgment against Norco is legally and factually insufficient, both of which can be resolved on appeal. *See* TEX.R.APP.P. 33.1(d)("In a nonjury case, a complaint regarding the legal or factual sufficiency of the evidence . . . may be made for the first time on appeal in the complaining party's brief"). We will consider both of these points as a single issue.

sufficiency of the evidence issues. *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003); *Alford v. Johnston*, 224 S.W.3d 291, 296 (Tex.App.--El Paso 2005, pet. denied). In determining if some evidence supports the judgment and the implied findings of fact, we consider only that evidence most favorable to the issue and disregard entirely that which is opposed to it or contradictory in its nature. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). The judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *Rosemond v. Al–Lahiq,* 331 S.W.3d 764, 767 (Tex. 2011).

Because Norco's challenge to the breach of contract on legal sufficiency grounds is based on adverse findings with respect to issues on which it did not have the burden of proof, Norco must demonstrate on appeal that no evidence supports each adverse finding. *See Croucher v. Croucher*, 660 S.W.2d 55, 57 (Tex. 1983). We view the evidence in the light most favorable to the trial court's findings, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). We sustain a "no evidence" issue only if there is no more than a mere scintilla of evidence proving the element of the claim. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 520 (Tex. 2002).

Similarly, because Norco did not bear the burden of proof on the breach of contract claim, based on factual sufficiency, Norco must show there was insufficient evidence to support the relevant adverse findings. *See Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex.App.--Austin 1992, no writ). We consider and weigh all of the evidence and set aside the verdict only if the evidence that supports the finding is so weak as to be clearly wrong and manifestly unjust. *Long v. Long*, 196 S.W.3d 460, 464 (Tex.App.--Dallas 2006, no pet.). In

8

making this review, we are not a fact finder and will not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if a different answer could be reached. *Long,* 196 S.W.3d at 464; *Bright v. Addison*, 171 S.W.3d 588, 595 (Tex.App.--Dallas 2005, pet. denied). The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse. *Bright*, 171 S.W.3d at 595.

### Actual and Apparent Authority

Texas law does not presume agency and the party asserting agency has the burden of proving it. *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007). A "good faith belief" on the part of a third-party, a person with whom it is dealing is the agent of another, is not enough to bind the purported principal. *2616 S. Loop LLC v. Health Source Home Care, Inc*., 201 S.W.3d 349, 356 (Tex.App.--Houston [14th Dist.] 2006, no pet.); *Coker v. Cramer Fin. Grp., Inc*., 992 S.W.2d 586, 595 (Tex.App.--Texarkana 1999, no pet.). Absent either actual or apparent authority, an agent cannot bind a principal. *Sanders v. Total Heat & Air, Inc.*, 248 S.W.3d 907, 913 (Tex.App.--Dallas 2008, no pet.). Actual and apparent authority are both created through conduct of the principal communicated either to the agent (actual authority) or to a third party (apparent authority). *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007).

Actual authority, either express or implied, usually denotes that authority the principal (1) intentionally confers upon the agent, (2) intentionally allows the agent to believe he possesses, or (3) by want of due care allows the agent to believe he possesses. *2616 S. Loop*, 201 S.W.3d at 356. Actual authority is based on written or spoken words or the conduct of the principal communicated to the purported agent. *Walker Ins. Servs. v. Bottle Rock Power Corp*., 108 S.W.3d 538, 549-50 (Tex.App.--Houston [14th Dist.] 2003, no pet.). An agency relationship

9

based on actual authority may be implied through the conduct of either of the parties or from the facts and circumstances surrounding the transaction in question. *Walker Ins. Servs.,* 108 S.W.3d at 550. In order to prove actual authority, therefore, there must be evidence that either (1) the principal intentionally conferred authority on another to act as its agent, or (2) the principal intentionally, or by a want of due care, allowed another to believe that the agent possessed authority to act as the principal's agent. *See 2616 S. Loop*, 201 S.W.3d at 356. In determining whether a party had actual authority to act for another, we examine the words and conduct by the principal to the alleged agent regarding the alleged agent's authority to act for the principal. *See Walker Ins. Servs*., 108 S.W.3d at 550.

> Apparent authority, based on estoppel, arises:
>
> [E]ither from a principal knowingly permitting an agent to hold [himself] out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority [he] purports to exercise.

*Gaines*, 235 S.W.3d at 182, *quoting Baptist Mem. Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 948 (Tex. 1998).

In other words, apparent authority arises when a principal intentionally or negligently induces parties to believe that a person is the principal's agent although the principal has not conferred any authority on that person.[8] *Thomas Reg'l Directory Co., Inc. v. Dragon Prods., Ltd*., 196 S.W.3d 424, 427 (Tex.App.--Beaumont 2006, pet. denied). To establish apparent authority,

---

[8] *See generally* RESTATEMENT (THIRD) OF AGENCY § 1.03 cmt. b (2006)("[A]n agent is sometimes placed in a position in an industry or setting in which holders of the position customarily have authority of a specific scope. Absent notice to third parties to the contrary, placing the agent in such a position constitutes a manifestation that the principal assents to be bound by actions by the agent that fall within that scope. A third party who interacts with the person, believing the manifestation to be true, need not establish a communication made directly to the third party by the principal to establish the presence of apparent authority . . . .").

the Texas Supreme Court explained that:

> [T]he standard is that of a reasonably prudent person, using diligence and discretion to ascertain the agent's authority. Thus, to determine an agent's apparent authority we examine the conduct of the principal and the reasonableness of the third party's assumptions about authority. [Citation omitted].

*Gaines*, 235 S.W.3d at 182-83.

The essential elements required to establish apparent authority are: (1) a reasonable belief in the agent's authority; (2) generated by some holding out or neglect of the principal; and (3) a justifiable reliance on the authority. *2616 S. Loop*, 201 S.W.3d at 356; *see generally Sampson*, 969 S.W.2d at 947-48 n.2 (listing the elements required to establish ostensible agency, and noting that while courts use the terms ostensible agency, apparent agency, apparent authority, and agency by estoppel interchangeably, that as a practical matter, there are no distinctions between them).[9] In determining whether apparent authority exists, "[a] court may consider only the conduct of the principal leading a third party to believe that the agent has authority in determining whether an agent has apparent authority." *2616 S. Loop*, 201 S.W.3d at 356.

Manifestations of apparent authority must take the form of "conduct by a person, observable by others, that expresses meaning." RESTATEMENT (THIRD) OF AGENCY § 1.03, comment (b). Such conduct, however, "is not limited to spoken or written words . . . . Silence may constitute a manifestation when, in light of all the circumstances, a reasonable person would express dissent to the inference that other persons will draw from silence. Failure then to express dissent will be taken as a manifestation of affirmance." *Id.*

---

[9] Under the doctrine of ostensible agency, a principal may be held liable under circumstances in which the principal's own conduct should equitably prevent it from denying the existence of an agency. *Sampson*, 969 S.W.2d at 947. Ostensible agency is based on estoppel and applies when a principal, by its conduct, causes a third party to reasonably believe that the putative agent was acting on behalf of the principal and the third party justifiably relied on such conduct. *Sampson*, 969 S.W.2d at 948; RESTATEMENT (THIRD) OF AGENCY §§ 2.03, 3.03 (2006).

11

**Application of law to evidence presented**

In the instant case, the evidence indicates that prior to Protect commencing work, Cameron presented Bailey with a contract between Protect and Norco and advised Bailey to contact Norco and obtain approval before Protect could proceed. Cameron did so because Protect's business practices required authorization from the transportation company itself. The evidence is contradictory regarding whether Bailey obtained approval to execute the contract from Burroughs, with Bailey testifying he received authorization, Burroughs denying she gave such authorization. Cameron testified he did not hear the specific conversation purportedly authorizing Bailey to enter into the contract with Norco. However, Bailey immediately represented to him Norco had authorized the work to proceed. Bailey signed the contract, and after the environmental clean-up was completed, a copy of the signed contract and the invoice were sent to Norco via fax and mail in a matter of hours. As the events occurred that night, Burroughs said she had advised Norco's safety director of the situation. Later, after the work was performed, Stanley spoke to David Ogden, Norco's safety director. According to Stanley and Cameron, during the four months between the date of the initial invoice and up until suit was filed against Norco for non-payment, Norco never once asserted they were refusing to pay the invoice based on Bailey's alleged lack of authority.

Considering the evidence most favorable to the issue and disregarding evidence to the contrary, we find that the trial court's judgment is supported by a theory of apparent authority. Cameron was unsure of the scope of Bailey's authority and sought confirmation, and in doing so established a reasonable belief in Bailey's authority. This is supported by Cameron's testimony regarding Bailey stepping away to make a call to Norco to seek authorization to enter into the

contract. While Bailey's statement also indicates that he believed he was authorized to enter into contracts for Norco cannot be proof of Norco's acceptance in and of itself. Norco's silence and failure to object or refute the contract or the subsequent invoice can be shown as a manifestation of acceptance. Protect, based on Norco's manifestation of acceptance through its silence, could justifiably rely on Bailey's authority in such a circumstance, meeting the requirements of apparent authority. *2616 S. Loop*, 201 S.W.3d at 356. Certainly, Norco's continued silence for over four months regarding the issue of Bailey's authority to bind them is indicia of their manifestation of the acceptance of that contract and authority.

There is more than a mere scintilla of evidence supporting Protect's claims and the evidence presented was not so weak as to be clearly wrong and manifestly unjust. *St. Joseph Hosp.*, 94 S.W.3d at 520; *Long*, 196 S.W.3d at 464. As noted above, the amount of evidence necessary to affirm a judgment is far less than that necessary to reverse. *Bright*, 171 S.W.3d at 595-96. Norco has failed to demonstrate either "no evidence" or "insufficient evidence" support such a finding. *Croucher*, 660 S.W.2d at 57; *Westech Eng'g, Inc.*, 835 S.W.2d at 196. Perhaps another trial judge could have found, on the basis of this evidence, Bailey did not have apparent authority to enter into the contract. However, the trial court's finding to the contrary in the instant case is not erroneous. Because the trial court's judgment can be upheld on the basis of apparent authority, the judgment must be affirmed. *Rosemond,* 331 S.W.3d at 767. Norco's sole issue is overruled.

**Protect's Appeal**

In its sole issue, Protect asserts the trial court abused its discretion by awarding attorney's fees of $3,500 where the evidence presented indicates Protect incurred attorney's fees and

expenses of $8,924.82, and thus the trial court's decision lacked factual sufficiency.

Generally, the amount of money awarded as attorney's fees rests within the sound discretion of the court. *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990). Regarding attorney's fees, the analysis of whether or not a court abuses its discretion, is determined by a two-step inquiry: (1) did the trial court have sufficient information upon which to exercise its discretion; and (2) if so, did the trial court err in exercising that discretion. *Alford*, 224 S.W.3d at 298. A court abuses its discretion when it acts without reference to guiding rules and principles, i.e., when it acts in an arbitrary and unreasonable manner. *F–Star Socorro, L.P. v. City of El Paso*, 281 S.W.3d 103, 106 (Tex.App.--El Paso 2008, no pet.).

Protect presented uncontroverted testimony from their counsel, along with supporting exhibits, reasonable attorney's fees and expenses incurred by Protect were $8,924.82 and it was anticipated additional fees of $2,500 for each level of appeal. According to the invoice presented, the cost of the clean-up was $11,616.34.

In general, an interested witness's testimony, though uncontradicted, does no more than raise a fact issue to be determined by the fact finder. *Elias v. Mr. Yamaha, Inc*., 33 S.W.3d 54, 62 (Tex.App.--El Paso 2000, no pet.). However, an exception to this rule exists where the circumstances of the testimony are clear, direct, and positive and free from contradiction, inaccuracies, and other circumstances tending to raise suspicions thereon. *Ragsdale*, 801 S.W.2d at 882. In such a case, the testimony may be taken as true as a matter of law. *Id*. This exception is especially true where the opposing party has the same opportunity to contradict, or raise doubts about the testimony, and fails to do so. *Id*. This is not to say, however, that an award of the claimed amount is necessary in every case where uncontradicted testimony is offered. *Id*; *Welch*

14

*v. Hrabar*, 110 S.W.3d 601, 610 (Tex.App.--Houston [14th Dist.] 2003, pet. denied). If the evidence is unreasonable, or not credible in some way, then such evidence only raises a fact issue to be determined by the fact finder. *Ragsdale*, 801 S.W.2d at 882. Trial judges can draw on their common knowledge and experience as lawyers and as judges in considering the testimony, the record, and the amount in controversy in determining attorney's fees. *Leggett v. Brinson*, 817 S.W.2d 154, 157 (Tex.App.--El Paso 1991, no writ); *see also Bocquet v. Herring*, 972 S.W.2d 19, 22 (Tex. 1998)(dissenting opinion).

The evidence in this case regarding the amount of attorney's fees was uncontroverted by any testimony, and Protect contends that it was error for the trial court to reduce the requested award. This would be true unless the trial court found that attendant circumstances contradicted the requested fees or if the evidence was unreasonable or questionable. Because findings of fact and conclusions of law were neither filed nor requested by Protect in this case, we have no way to ascertain the trial court's reasoning. As noted above, if findings of fact and conclusions of law are neither filed nor requested, the judgment of the trial court implies all necessary finding of fact to support it. *Spir Star AG*, 310 S.W.3d at 871-72; *Moncrief Oil Intern., Inc.*, 332 S.W.3d at 7. Therefore, the judgment in this case implies that the trial court found the requested attorney's fees, including the fees in the event of an appeal,[10] contradicted by attendant circumstances or in some way were found to be unreasonable. Protect has not shown that the trial court abused its discretion and its sole issue is therefore overruled.

## CONCLUSION

Having overruled both Protect's and Norco's issues, the judgment of the trial court is

---

[10] *See, e.g. Huckeby v. Lawdermilk*, 709 S.W.2d 331, 334 (Tex.App.--Eastland 1986, no pet.)(finding no abuse of discretion by trial court in not awarding attorney's fees in event of appeal).

hereby affirmed.


May 8, 2013

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.