COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

SANDERS OIL & GAS GP, LLC AND                    No. 08-13-00299-CV

SANDERS OIL & GAS, LTD.,                                   §

§                                Appeal from the

Appellants,                    §

§                                112th District Court

V.                                                                      §

§                                of Reagan County, Texas

RIDGEWAY ELECTRIC,                                      §

§                                (TC# 1611)

Appellee.                      §

## OPINION

Sanders Oil & Gas GP, LLC and Sanders Oil & Gas, Ltd. appeal from a judgment

entered in favor of Ridgeway Electric.  We reverse and render in part; we reverse and remand in

part; and affirm the judgment as modified.

## FACTUAL SUMMARY

David Ridgeway and his wife, Nikiti Ridgeway, own Ridgeway Electric which is in the

business of building electric power lines in oil fields.[1]  The company also performs maintenance

and repair, trouble shooting, and service calls.  Joe Johnson contacted David about building

---

[1] To distinguish the Ridgeways from Ridgeway Electric in the factual summary, the opinion will refer to them as David and Nikiti.  We will refer to their company as Ridgeway.  We will refer to Sanders Oil & Gas GP LLC as "Sanders LLC" and to Sanders Oil & Gas Ltd. as "Sanders Ltd." or will refer to them collectively as Appellants. We will refer to Gail Sanders as "Gail" to distinguish her from Sanders LLC and Sanders Ltd. where necessary.

power lines to five wells on what is referred to as the "Kirby lease." The project also included the well "hookup" to the power lines. According to David, the project consisted of two distinct parts: (1) the power line building and (2) the well hookup. The cost for the power line building was $1,200 per pole while the cost of the well hookup was based on materials and labor. David explained that Johnson was the only "pumper" for Sanders Oil. Johnson told David where the poles and power lines could be put on the lease. David provided the price for the job to the project consultant for "Sanders Oil," a man he knew only as "Wayne."

At the time of trial, Johnson had worked in the oil business for approximately sixty years. He had worked for an entity he referred to simply as "Sanders Oil" which was owned by Gail Sanders. He was unfamiliar with the names "Sanders Oil & Gas GP, LLC" or "Sanders Oil & Gas, Ltd." When Gail told Johnson that she needed to have power lines run to new wells on the Kirby lease, Johnson contacted David because he was familiar with him from other projects. According to Johnson, David gave him an estimate for the power line building which he passed on to Gail. Once the power lines had been built, Johnson hired Ridgeway to do the well hookup for each of these five wells on the Kirby lease. Ridgeway also performed repair work on the Kirby lease.

Nikiti prepared the invoices for the Kirby lease project, including the additional repair work, and went over the invoices with Johnson before sending them to "Sanders Inc." in Granbury, Texas for payment. Some of the statements were paid, but more than $70,000 remained unpaid several months after Ridgeway completed the work.[2] Ridgeway introduced into evidence Plaintiff's Exhibit 16 which is an unsigned letter, dated April 15, 2010, from Gail Sanders to Ridgeway Electric. The letter is printed on Sanders Ltd.'s letterhead and reflects that

---

[2] The record includes eighteen invoices from Ridgeway to "Sanders Inc." for materials and work performed on the Kirby lease between August 31, 2009 and May 31, 2010. The total amount due under the invoices was $71,752.98.

Gail is the CEO. The letter addressed Sanders Ltd.'s delay in payment of invoices from Ridgeway. Stating that Sanders Ltd. would be closing on a credit facility at the end of April 2010, Gail apologized for the delay in payment. Ridgeway filed a mechanic's and materialman's lien on June 16, 2010 on the mineral estate of the Kirby lease in the amount of $80,357.16. The lien affidavit explained that a claim for $80,357.16 was owed to Ridgeway for labor and material furnished to "Sanders Oil & Gas Company."

On December 21, 2010, Ridgeway's attorney sent a demand letter to "Sanders, Inc." and Gail regarding the past due obligation and the materialman's lien. The letter made demand for payment within twenty days and warned that if the amount owed was not paid, Ridgeway would pursue all remedies available. On January 10, 2011, Gail sent an email to the attorney regarding the letter. The email was sent from the Sanders Ltd. email address and stated in pertinent part that:

> We have made attempts to come to some conclusion regarding the work done by your client. Our last communication with Ridgeway entailed the wife of the owner asking my Controller to call her husband, and he would most likely 'go off on him.'
>
> Mr. Kosub, the work Ridgeway Electric performed on our lease was substandard, at best. We have had to re-do a lot of the work performed by Ridgeway which has cost us production and downtime, and additional cost.
>
> We would like to come to a conclusion with regard to this matter. I feel Ridgeway can not [sic] justify the amount they charged us for sub standard [sic] work that we had to have partially re-done.

Ridgeway filed suit stating claims for suit on a sworn account, breach of contract, quantum meruit/unjust enrichment, and foreclosure on the mechanic's and materialman's lien. Appellants answered and asserted a counterclaim for quantum meruit, DTPA violations, breach of warranty, negligence, and negligent misrepresentation. The trial court submitted Ridgeway's breach of contract and quantum meruit claims and Appellants' DTPA violations, breach of

warranty, and negligence claims to the jury. The jury found against Appellants on their claims and in favor of Ridgeway on its breach of contract claim. The jury awarded damages against Sanders LLC in the amount of $35,126.50 and against Sanders Ltd. in the same amount. The trial court entered judgment against Sanders LLC and Sanders Ltd. in accordance with the jury's verdict, awarded costs to Ridgeway in the amount of $3,033.35, awarded pre-judgment interest in the amount of $16,999.26, and awarded Ridgeway its attorney's fees in the amount of $19,066.40 plus conditional appellate awards.

## AGENCY

In Issue One, Appellants challenge the legal sufficiency of the evidence supporting the jury's findings that either Sanders LLC or Sanders Ltd. had an agreement with Ridgeway or that either one of them breached the agreement.[3]

*Standard of Review and Relevant Law*

When a party attacks the legal sufficiency of an adverse finding on an issue for which it did not have the burden of proof, it must demonstrate that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). An appellate court will sustain a legal sufficiency or "no evidence" challenge if the party suffering the adverse decision at trial shows: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidences establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005); *Stanley Works v. Wichita Falls Independent School District*, 366 S.W.3d 816, 828 (Tex.App.--El Paso 2012, pet. denied). More than a scintilla of evidence exists when the

---

[3] Appellants' first issue purportedly challenges the legal and factual sufficiency of the evidence supporting these elements, but the arguments set forth in the brief and the prayer exclusively address the legal sufficiency of the evidence. We will likewise restrict our review to the legal sufficiency of the evidence.

evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Ford Motor Company v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). Evidence does not exceed a scintilla if it is so weak as to do more than to create a mere surmise or suspicion that the fact exists. *Id.* When conducting a legal sufficiency review, we must view the evidence in the light favorable to the verdict, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller*, 168 S.W.3d at 830. The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller*, 168 S.W.3d at 827.

The four elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach. *Velvet Snout, LLC v. Sharp*, 441 S.W.3d 448, 451 (Tex.App.--El Paso 2014, no pet.); *McCulley Fine Arts Gallery, Inc. v. "X" Partners*, 860 S.W.2d 473, 477 (Tex.App.--El Paso 1993, no writ). The elements of a valid contract are: (1) an offer; (2) an acceptance; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *DeClaire v. G & B McIntosh Family Limited Partnership*, 260 S.W.3d 34, 44 (Tex.App.--Houston [1st Dist.] 2008, no pet.).

*Existence of a Valid Contract*

Appellants challenge the legal sufficiency of the evidence supporting the jury's verdict that each of them entered into a contract with Ridgeway to have electrical work performed on the Kirby lease. Ridgeway responds that the evidence shows that Johnson, acting with actual authority or apparent authority, entered into the oral agreement in question as Appellants' agent.

- 5 -

Appellants allege in their reply brief that Ridgeway did not plead or prove agency, and therefore, it has been waived.

Appellants are correct that Ridgeway did not expressly plead agency, but they do not address whether the issue was tried by consent. An issue is tried by consent when both parties present evidence on an issue and the issue is developed during trial without objection. *Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009); *see* TEX.R.CIV.P. 67 ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). Ridgeway offered evidence on the issue of Johnson's authority at trial without objection and Appellants attempted to contradict Johnson's testimony through cross-examination. Significantly, Appellants did not object to Question 1, which included the issue of agency, on the ground that Ridgeway had failed to plead or prove agency. Question 1 stated:

> Did Sanders Oil & Gas, LLC and/or Sanders Oil & Gas LTD. agree for Ridgeway Electric to have electrical work done on its oil well lease?
>
> In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.
>
> A party's conduct includes the conduct of another who acts with the party's authority or apparent authority.
>
> Authority for another to act for a party must arise from the party's agreement that the other act on behalf and for the benefit of the party. If a party so authorizes another to perform an act, that other party is also authorized to do whatever else is proper, usual, and necessary to perform the act expressly authorized.
>
> Apparent authority exists if a party (1) knowingly permits another to hold himself out as having authority or, (2) through lack of ordinary care, bestows on another such indications of authority that lead a reasonably prudent person to rely on the apparent existence of authority to his detriment. Only the acts of the party sought to be charged with responsibility for the conduct of another may be

considered in determining whether apparent authority exists.

> In attempting to reach an agreement, one party may specifically prescribe the time, manner, or other requirements for the party's acceptance of the offer. If the offer is not accepted as prescribed, there is no agreement.

The jury answered this question affirmatively with respect to both Sanders LLC and Sanders Ltd. Given that the parties submitted evidence related to the issue of Johnson's authority to enter into the contract on behalf of Appellants, and Ridgeway obtained a jury finding on the issue, we conclude that the parties tried the issue of agency by consent. We turn now to a review of the evidence supporting the jury's verdict.

Agency is a consensual relationship between two parties "by which one party acts on behalf of the other, subject to the other's control." *Suzlon Energy Ltd. v. Trinity Structural Towers, Inc.*, 436 S.W.3d 835, 841 (Tex.App.--Dallas 2014, no pet.), *quoting Reliant Energy Services, Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 782-83 (Tex.App.--Houston [1st Dist.] 2011, no pet.). A principal is liable for the acts of another acting as its agent only when the agent has actual or apparent authority to do those acts or when the principal ratifies those acts. *Reliant Energy*, 336 S.W.3d at 783. The authority of an agent to act for its principal depends on the words or conduct of the principal toward either the agent, creating actual authority, or toward a third party, creating apparent authority. *Spring Garden 79U, Inc. v. Stewart Title Co*., 874 S.W.2d 945, 950 (Tex.App.--Houston [1st Dist.] 1994, no pet.); *see Reliant Energy*, 336 S.W.3d at 783. Texas law does not presume agency and the party asserting agency has the burden of proving it. *Protect Environmental Services, Inc. v. Norco Corporation*, 403 S.W.3d 532, 540 (Tex.App.--El Paso 2013, pet. denied), *citing IRA Resources, Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007).

*Actual Authority*

Actual authority includes both express and implied authority. *Reliant Energy*, 336 S.W.3d at 783; *2616 S. Loop L.L.C. v. Health Source Home Care, Inc*., 201 S.W.3d 349, 356-57 (Tex.App.--Houston [14th Dist.] 2006, no pet.). Actual authority is based on written or spoken words or the conduct of the principal communicated to the purported agent. *Protect Environmental Services*, 403 S.W.3d at 540; *Walker Insurance Services v. Bottle Rock Power Corporation*, 108 S.W.3d 538, 549-50 (Tex.App.--Houston [14th Dist.] 2003, no pet.). An agency relationship based on actual authority may be implied through the conduct of either of the parties or from the facts and circumstances surrounding the transaction in question. *Protect Environmental Services*, 403 S.W.3d at 540; *Walker Insurance Services*, 108 S.W.3d at 550.

Express authority is delegated to an agent by words of the principal that expressly and directly authorize the agent to do an act or series of acts on behalf of the principal. *Reliant Energy*, 336 S.W.3d at 783, *citing Crooks v. M1 Real Estate Partners, Ltd.*, 238 S.W.3d 474, 483 (Tex.App.--Dallas 2007, pet. denied). Express authority exists when the principal has made it clear to the agent that the principal wants the act under scrutiny to be performed. *City of San Antonio v. Aguilar*, 670 S.W.2d 681, 683 (Tex.App.--San Antonio 1984, writ dism'd). Implied authority is the authority of an agent to do whatever is necessary and proper to carry out the agent's express powers. *Reliant Energy*, 336 S.W.3d at 783. An agent that does not have express actual authority cannot have implied authority. *Reliant Energy*, 336 S.W.3d at 783.

In order to establish the existence of actual authority, the record must contain evidence proving that either the principal (1) intentionally conferred authority on another to act as its agent, or (2) the principal intentionally, or by want of due care, allowed the agent to believe that it possessed authority to act as the principal's agent. *Protect Environmental Services*, 403 S.W.3d at 540; *2616 S. Loop L.L.C.*, 201 S.W.3d at 356. In determining whether an agent had

actual authority to act for his principal, we examine the principal's words and conduct relative to the agent. *Reliant Energy*, 336 S.W.3d at 783; *see Walker Insurance Services v. Bottle Rock Power Corporation*, 108 S.W.3d 538, 550 (Tex.App.--Houston [14th Dist.] 2003, no pet.)(observing that existence of agency relationship based on actual authority may be implied from conduct of parties or from facts and circumstances surrounding the transaction in question). A finding of actual authority cannot be based merely on the words or deeds of the agent. *Id.*

*Apparent Authority*

Apparent authority is the power of an agent to "affect the legal relations of another person by transactions with third persons." *Ames v. Great Southern Bank*, 672 S.W.2d 447, 450 (Tex. 1984); *quoting* Restatement (Second) Of Agency § 8 (1958); *Reliant Energy*, 336 S.W.3d at 784. An agent acting within the scope of his apparent authority binds the principal as if the principal itself had taken the action. *Reliant Energy*, 336 S.W.3d at 784, *citing Ames*, 672 S.W.2d at 450. Apparent authority is based on estoppel, and it arises from either a principal knowingly permitting an agent to hold himself out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thereby leading a reasonably prudent person to believe that the agent has the authority he purports to exercise. *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007). Only the conduct of the principal in leading a third party to believe that the agent has authority may be considered. *Reliant Energy*, 336 S.W.3d at 784, *citing Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007). We are required to consider the principal's acts of participation, knowledge, or acquiescence because the alleged agent's declarations of authority, without more, do not establish either the existence or scope of the alleged authority. *Gaines*, 235 S.W.3d at 182. There must also be evidence that the principal had full knowledge of all material facts at the time of the conduct alleged to be the basis for the

estoppel. *Gaines*, 235 S.W.3d at 182. The proper standard is that of a reasonably prudent person using diligence and discretion to ascertain the agent's authority. *Gaines*, 235 S.W.3d at 182-83; *Reliant Energy*, 336 S.W.3d at 784. When determining an agent's apparent authority, we examine the conduct of the principal and the reasonableness of the third party's assumptions about authority. *Gaines*, 235 S.W.3d at 183.

*The Evidence Related to Johnson's Authority*

Joe Johnson testified that he worked for "Sanders Oil" which was owned by Gail Sanders. Other evidence at trial showed that Gail is the CEO of Sanders Oil & Gas, Ltd., but there is no evidence showing her relationship with Sanders Oil & Gas GP, LLC. When Gail told Johnson that she needed to have power lines run to new wells on the Kirby lease, Johnson contacted David because he was familiar with him from other projects. According to Johnson, David gave him an estimate for the power line building which he passed on to Gail. Ridgeway performed the work and submitted invoices to "Sanders Inc." Gail paid a portion of the invoices, but a substantial number remained unpaid. Nikiti spoke with Gail on the telephone about the past-due invoices. Gail said that she would pay the bills but she asked for additional time to pay them because of financial problems. The record includes an unsigned letter, dated April 15, 2010, from Gail as the CEO of Sanders Ltd. to Ridgeway Electric. The letter pertains to Sanders Ltd.'s delay in payment and states that Sanders Ltd. would be closing on a credit facility at the end of the month.

When the foregoing evidence is taken in the light most favorable to the jury's verdict, we conclude that there is more than a scintilla of evidence that Gail Sanders, on behalf of Sanders Ltd., expressly authorized Joe Johnson to obtain electric service for the new wells on the Kirby lease and he had implied authority to enter into an agreement with Ridgeway Electric to provide

the service. Even if the evidence is insufficient to establish that Sanders Ltd. expressly authorized Johnson to enter into the contract with Ridgeway, the evidence supports a conclusion that Gail Sanders clothed him with the indicia of authority such that a reasonably prudent person would believe Johnson had the authority he purported to exercise. There is, however, no evidence that Gail provided the same express authorization to Johnson on behalf of Sanders LLC. Likewise, there is no evidence that Johnson had apparent authority to enter into an agreement with Ridgeway Electric on behalf of Sanders LLC.

### *Breach of the Agreement*

Appellants additionally argue that there is no evidence either one of them breached the agreement with Ridgeway Electric. It is unnecessary to address this argument as it pertains to Sanders LLC because there is no evidence it entered into an agreement with Ridgeway. The record is replete with evidence that Sanders Ltd. did not pay any of the invoices introduced into evidence at trial. The jury's determination that Sanders Ltd. breached the agreement is supported by legally sufficient evidence. We therefore overrule the portion of Issue One pertaining to Sanders Ltd. but sustain the issue as it applies to Sanders LLC.

## APPORTIONMENT OF DAMAGES

In Issue Two, Appellants attack the legal sufficiency of the evidence supporting the jury's answer to Question 5 which apportioned the damages equally between the Appellants. Question 5 inquires:

> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Ridgeway Electric for its damages, if any, that resulted from Sanders Oil & Gas GP, LLC and/or Sanders Oil & Gas LTD failure to comply with the contract?
>
> Do not include in your answer any amount that you find Ridgeway Electric could have avoided by the exercise of reasonable care.

Answer in dollars and cents for damages, if any:

Sanders Oil & Gas GP, LLC

Answer: $35,126.50

Sanders Oil & Gas, LTD

Answer: $35,126.50

We have already determined that the evidence is insufficient to establish that Sanders LLC entered into or breached an agreement with Ridgeway Electric. Consequently, the only question is whether the evidence is legally sufficient to support the jury's award of damages related to Sanders Ltd. The evidence at trial established that Ridgeway performed electrical work on the Kirby lease at the request of the agent for Sanders Ltd.; Ridgeway billed Sanders Ltd. in accordance with its estimates and quoted prices; and Sanders Ltd. failed to pay invoices for the work amounting to more than $70,000. Consequently, the evidence is legally sufficient to support the jury's award of damages in the amount of $35,126.50 against Sanders Ltd. We overrule Issue Two.

## TERMS OF THE AGREEMENT

In their third issue, Appellants contend that the trial court erred by submitting Question 2 because the evidence is factually insufficient to prove that they consented to the essential terms of the agreement with Ridgeway.[4] They additionally argue in this same issue that the evidence is factually insufficient to support the jury's award of damages, and therefore, the trial court erred by submitting Question 5.[5] Because we have already determined that the evidence is legally insufficient to establish the existence of an agreement between Ridgeway and Sanders LLC, it is

---

[4] Question 2 addresses whether Appellants failed to pay for the work completed by Ridgeway Electric.

[5] Question 5 asks the jury to determine the amount of damages resulting from each Appellant's failure to comply with the agreement.

unnecessary to address this issue as it pertains to Sanders LLC.

The elements of a valid contract are: (1) an offer; (2) an acceptance; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *DeClaire*, 260 S.W.3d at 44. In a factual sufficiency challenge, we must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chemical Company v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). We do not interfere with the fact finder's resolution of conflicts in the evidence or its determination of the weight and credibility of witness testimony, as its determinations on these matters are generally considered conclusive. *Navarrete v. Williams*, 342 S.W.3d 116, 122 (Tex.App.--El Paso 2011, no pet.); *Tate v. Tate*, 55 S.W.3d 1, 5 (Tex.App.--El Paso 2000, no pet.).

We will examine first the evidence related to whether Sanders Ltd. consented to the terms of the agreement. David Ridgeway testified in detail about his conversations with Joe Johnson with respect to providing electric services to the Kirby lease. The first part of the project involved running power lines to each well. David began with the first well, Kirby No. 1, and determined that eight secondary power line poles would be required. He provided this information to Johnson and the consultant, Wayne, and advised them that the job would cost $1,200 per pole. David completed this portion of the job and proceeded to do the same thing for each of the other four wells on the Kirby lease. Johnson also hired Ridgeway to perform the well hookup. David testified that the cost for this portion of the job was determined based on the cost of the materials and the number of hours required by the job. At Johnson's request, Ridgeway also performed electrical repair work on the Kirby lease. Both Johnson and Nikiti Ridgeway

- 13 -

testified that she went over the invoices with Johnson before sending them to Gail Sanders. We conclude that the evidence is factually sufficient to show Sanders Ltd. consented to the essential terms of the agreement.

In this same issue, Appellants also argue that the evidence is factually insufficient to support the award of damages because the invoices and demands made by Ridgeway are inconsistent. Ridgeway Electric initially made demands on Appellants to pay more than $80,000. Nikiti specifically testified that the eighteen invoices introduced into evidence and totaling $70,252.98 had not been paid by Appellants. She explained that she had initially charged interest in the amount of 1.5 percent per month on the unpaid invoices, but after she learned that she was not permitted to do that, she corrected the invoices. The invoices are consistent with the testimony of Johnson and the Ridgeways regarding the work Ridgeway Electric was required to perform on the Kirby lease. It was the jury's task to evaluate the credibility of the witnesses, and to resolve conflicts and weigh the evidence. Because the evidence is factually sufficient to support the jury's award of damages, we overrule Issue Three.

## RIDGEWAY ELECTRIC'S PERFORMANCE

In their final issue, Appellants complain that the jury's finding that Ridgeway Electric complied with the agreement is not supported by factually sufficient evidence. To recover on its breach of contract claim, Ridgeway was required to prove that it performed under the agreement. *See Velvet Snout, LLC,* 441 S.W.3d at 451 (stating elements of a breach of contract claim).

Appellants do not dispute that Ridgeway performed the electric work. They instead argue that Ridgeway "did not consult the applicable Southwest Texas power code to determine the specifications for this project," "the wooden poles on which the electrical wires were hung were not installed straight, and the wires which hung between the poles were hung so loosely

- 14 -

that when the wind would blow, or when a buzzard or turkey would (foreseeably) land on the wires, the wires would sag and touch each other, shorting out power along the electric lines." David Ridgeway testified that he was familiar with the applicable code and followed it when he designed and installed the power lines. He acknowledged that if a turkey landed on the center of a line, it could sag and cause the lines to touch, but he insisted that he installed the lines according to code. Johnson denied that Ridgeway's lines ever touched and shorted out in windy conditions, but he acknowledged that if a turkey landed on a line it could cause a power outage. He described it as "not a big deal." Appellants also maintain that they had to hire another company to re-do a portion of Ridgeway's work. We have reviewed the citations to the reporter's record found in Appellants' brief and find no support for these claims. Appellants' attorney cross-examined David Ridgeway at length and he denied any knowledge that Ridgeway Electric's work had been re-done by another company.

We conclude that the evidence supporting the jury's determination that Ridgeway performed the electrical work as required by the contract is not so weak or so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. Issue Four is overruled.

## CONCLUSION

Having sustained Issue One in part, we reverse that portion of the judgment awarding damages against Sanders Oil & Gas GP LLC in the amount of $35,126.50 and render judgment that Ridgeway take nothing on its breach of contract claim against Sanders Oil & Gas GP LLC. We also delete the award of pre-judgment interest and remand the cause to the trial court for the limited purpose of determining the amount of pre-judgment interest. Having overruled the remainder of Issue One and Issues Two through Four, we affirm the remainder of the judgment

as so modified.


February 11, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, J., and Ferguson, Judge
Ferguson, Judge (Sitting by Assignment)