

# NUMBER 13-20-00497-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**HUGO AREVALO AND
LORENA QUINTANILLA,**                         **Appellants,**

**v.**

**JAVIER LLAMAS AND
DENISE G. VALLE,**                             **Appellees.**

---

### On appeal from the County Court at Law No. 4
### of Hidalgo County, Texas.

---

## MEMORANDUM OPINION

**Before Justices Longoria, Hinojosa, and Silva
Memorandum Opinion by Justice Longoria**

This is an appeal from a trial de novo in a county court at law of a forcible detainer action originally dismissed by a justice court for lack of jurisdiction. Appellants Hugo Arevalo and Lorena Quintanilla appeal the county court's judgment granting forcible

detainer and awarding damages and attorney's fees in favor of appellees Javier Llamas and Denise G. Valle. In what we construe and renumber as four issues, appellants (1) challenge the county court's subject matter jurisdiction over the forcible detainer action (issues 1–5), (2) raise claims of legal and factually insufficient evidence (issues 6–9), (3) challenge the county court's damage awards (issues 10–15), and (4) challenge the county court's attorney's fee awards (issues 16–18). We affirm in part, reverse and render in part, and reverse and remand in part.

## I. BACKGROUND

On June 2, 2017, Valle, as landlord, and appellants, as tenants, entered into a residential lease agreement concerning property located in McAllen, Texas (the property). The lease set rent at $1,500 per month and expired on August 1, 2017. At the time of signing of the lease, Valle did not have formal title of the property. The lease contained a provision permitting appellants to remain tenants on a month-to-month basis upon expiration, provided that Valle accepted "new" rent from appellants which did not constitute past due rent. The lease also provided appellants with an exclusive right to purchase the property for $235,000, which would expire on November 1, 2017. Under this option-to-buy, any rent payments made would be applied toward the purchase price. Appellants and Llamas[1], on behalf of Valle, signed the lease. Appellants paid rent upon commencement of the lease and continued to do so after the lease term expired on August 1, 2017. Valle continued to accept these rent payments after August 1, 2017.

---

[1] The record indicates that Llamas is Valle's common-law husband.

2

On October 18, 2017, title of the property was transferred to Valle. On October 27, 2017, Valle transferred title to Llamas and assigned her interest and obligations under the lease to Llamas. The assignment of the lease was acknowledged and signed by appellants. On the same day, Llamas and appellants signed a separate contract for purchase of the property (purchase contract). Appellants continued paying rent after expiration of the lease's option to buy on November 1, 2017. Though they had also paid large sums of money for purchase of the property, Appellants ultimately did not pay the full purchase price. Appellants stopped paying rent in April or August 2018.[2] On September 24, 2019, appellants received a notice to vacate from appellees stating that appellants had breached the lease for failing to pay rent, and demanding that appellants pay all unpaid rent plus late fees or vacate the property within eleven days. Appellants did not pay any rent owed and continued occupying the property after the eleven days provided in the notice to vacate.

On December 3, 2019, appellees filed a petition for forcible detainer against appellants in the justice court. On December 19, 2019, appellants filed a plea to the jurisdiction, alleging that a title dispute barred the justice court from having jurisdiction over the forcible detainer action. On January 29, 2020, the justice court granted appellants' plea to the jurisdiction, dismissing appellees' forcible detainer action with prejudice. On February 4, 2020, appellees appealed the justice court's order to the county court. On August 18, 2020, trial commenced over appellees' appeal in the county court. On September 4, 2020, the county court rendered final judgment, granting appellees'

---

[2] The record contains conflicting testimony regarding whether appellants stopped paying rent in April or August 2018. However, there is no dispute that appellants stopped paying rent after August 2018.

3

petition for forcible detainer, and awarding damages and attorney's fees. On September 23, 2020, the county court rendered its findings of facts and conclusions of law.

On September 28, 2020, appellants filed a motion for new trial. On November 9, 2020, appellants timely filed their notice of appeal. On November 16, 2020, the county court denied appellants' motion for new trial. This appeal followed.

## II. JURISDICTION

By their first through fifth issues, appellants contend that the county court lacked jurisdiction to preside over the trial de novo and challenge the following conclusions of law rendered by the county court:

1. The court has jurisdiction;

2. A landlord tenant relationship existed between the parties;

3. [Appellants] defaulted under the terms of the lease and thereafter held over on the lease; and

8. [Appellees] had and have a greater right to possession of the property.

### A. Standard of Review & Applicable Law

We review de novo whether a trial court has subject-matter jurisdiction to hear a case. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). The issue of subject-matter jurisdiction may be raised for the first time on appeal. *See id.* To determine whether the plaintiff has affirmatively demonstrated the court's jurisdiction to hear the case, we consider the facts alleged by the plaintiff and, "to the extent it is relevant to the jurisdictional issue, the evidence submitted by the parties." *Tex. Nat. Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex. 2001). If a plaintiff pleads facts

4

that affirmatively demonstrate an absence of jurisdiction and such defect is incurable, immediate dismissal of the case is proper. *Peek v. Equip. Serv. Co.*, 779 S.W.2d 802, 804–05 (Tex. 1989).

A tenant or subtenant who "refuses to surrender possession of real property on demand commits a forcible detainer." *See* TEX. PROP. CODE ANN. § 24.002(a)(1) (providing that a tenant commits forcible detainer if he holds over "after the termination of the tenant's right of possession"). Justice courts have original jurisdiction over forcible entry and detainer proceedings. TEX. GOV'T CODE ANN. § 27.031(a)(2); TEX. PROP. CODE ANN. § 24.004; *Brumley v. McDuff*, 616 S.W.3d 826, 832 n.22 (Tex. 2021). District courts have exclusive jurisdiction over title disputes. *See* TEX. GOV'T CODE ANN. § 27.031(b)(4); *Merit Mgmt. Partners I v. Noelke*, 266 S.W.3d 637, 647 (Tex. App.—Austin 2008, no pet.); *see also Boehl v. Richardson*, No. 13-19-00021-CV, 2019 WL 6769876, at *2 (Tex. App.—Corpus Christi–Edinburg Dec. 12, 2019, pet. denied) (mem. op.). Forcible detainer actions in justice courts may be tried concurrently with title disputes in district court. *See Kassim v. Carlisle Ints., Inc.*, 308 S.W.3d 537, 541 (Tex. App.—Dallas 2010, no pet.); *Dormady v. Dinero Land & Cattle Co.*, 61 S.W.3d 555, 558 (Tex. App.—San Antonio 2001, pet. dism'd w.o.j.). Rule 510.3 provides that the court must adjudicate the right to possession and not title. TEX. R. CIV. P. 510.3(e). Thus, the only issue in a forcible detainer action is which party has the right to immediate possession of the real property. *Dormady*, 61 S.W.3d at 557 ("A forcible detainer action is a procedure to determine the right to immediate possession of real property. It is intended to be a speedy, simple, and inexpensive means to obtain possession without resort to an action on the title.").

5

A forcible detainer action requires proof of a landlord-tenant relationship. *Espinoza v. Lopez*, 468 S.W.3d 692, 695 (Tex. App.—Houston [14th Dist.] 2015, no pet. h.) (citing *Haith v. Drake*, 596 S.W.2d 194, 196 (Tex. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.)). To prevail in a forcible detainer suit, it is unnecessary for the plaintiff to prove title to the property. *Yarto v. Gilliland*, 287 S.W.3d 83, 89 (Tex. App.—Corpus Christi–Edinburg 2009, no pet.); *Rice v. Pinney*, 51 S.W.3d 705, 708–09 (Tex. App.—Dallas 2001, no pet.). Only proof of a superior right to immediate possession is necessary for the plaintiff to prevail in a forcible detainer action. *Dormady*, 61 S.W.3d at 557. A prevailing landlord in a suit for forcible detainer "is entitled to a judgment for possession of the premises and a writ of possession." TEX. PROP. CODE ANN. § 24.0061(a). However, if the question of title is so "intertwined" with the issue of immediate possession, then possession may not be adjudicated until legal title has been determined. *Dormady*, 61 S.W.3d at 557. Thus, "[i]f it becomes apparent that a genuine fact issue regarding title exists in a forcible detainer suit, the court does not have jurisdiction over the matter. *Aguilar v. Weber*, 72 S.W.3d 729, 732 (Tex. App.—Waco 2002, no pet.); *see also Boehl*, 2019 WL 6769876, at *2.

When a trial court issues findings of fact and conclusions of law, as the county court did in this case, we may review the findings of fact for legal and factual sufficiency and review the conclusions of law de novo. *Silbaugh v. Ramirez*, 126 S.W.3d 88, 94 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)); *see also Alamo Cmty. Coll. Dist. v. Miller*, 274 S.W.3d 779, 788 (Tex. App.—San Antonio, 2008, no pet.) (concluding that a trial court's

6

conclusions of law are reviewed de novo, and the appellate court will not reverse them unless they are erroneous as a matter of law).

## B.    Discussion

Appellants contend that the June 2, 2017 lease agreement was void at inception because Valle did not hold title to the property when the lease was signed. *See Aguilar*, 72 S.W.3d at 733–35 ("One indication that a justice court (and county court on appeal) is called on to adjudicate title to real estate in a forcible detainer case—and, thus, exceed its jurisdiction—is when a landlord tenant relationship is lacking."). Furthermore, appellants contend that the parties are solely bound by the October 27, 2017 purchase contract, and that resolution of this case requires determination of title to the property; therefore, the county court was without jurisdiction. *See Dormady*, 61 S.W.3d at 557; *Aguilar*, 72 S.W.3d at 732. We disagree.

Although a landlord-tenant relationship is not "a prerequisite to jurisdiction, the lack of such a relationship indicates that the case may present a title issue." *Espinoza*, 468 S.W.3d at 695. It is undisputed that the parties in this case signed the lease agreement on June 2, 2017. Although appellants argue that the lease was unenforceable and void at inception because Valle did not hold title to the property when the lease was signed, "[a] lessor may validly lease property to another, despite the fact that the title to the property is in a third person, if the lessor lawfully possesses the property." *See 2616 S. Loop L.L.C. v. Health Source Home Care, Inc.*, 201 S.W.3d 349, 355 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

Valle testified that she had permission from one of the owners of the property to enter into a lease; therefore, there was evidence before the county court that Valle, at the time the lease was signed, had lawful possession of the property and express permission to enter into a lease. Thus, Valle and appellants established a landlord-tenant relationship upon entry of the lease on June 2, 2017. *See id.* Valle later acquired title of the property, and the landlord-tenant relationship continued. Llamas was assigned the lease as landlord on October 27, 2017, the very same day that Valle transferred title of the property to him. Appellants defaulted under the lease when they stopped paying rent in April or August of 2018, at which point, Llamas was title owner to the property and appellants' landlord. Once appellants defaulted on the lease and continued to occupy the property after given notice to vacate, Llamas had a superior right of possession of the property, as landlord and title owner. *See Haith*, 596 S.W.2d at 196; *Goggins v. Leo*, 849 S.W.2d 373, 377 (Tex. App.—Houston [14th Dist.] 1993, no pet.); *see also Dormady*, 61 S.W.3d at 557.

Whether appellants had the right to immediate possession as purchaser depends upon whether they complied with the provisions of the purchase contract and thus obtained equitable title to the property. *See Haith*, 596 S.W.2d at 197. It is undisputed that appellants neither exercised the lease's option-to-buy prior to the option's expiration date, nor did they pay the full purchase price set out in the purchase contract. Thus, appellants did not have title to the property, equitable or otherwise. *See, e.g., Yarto*, 287 S.W.3d at 89–90 and n.11 (concluding purchaser can acquire equitable title by merely paying the purchase price and fully satisfying his obligations under the contract). Because

8

title was not at issue,[3] the county court had jurisdiction over appellees' forcible detainer action. Having determined appellants were in a landlord-tenant relationship, breached their contract, and did not have greater right to possession of the property, the challenged conclusions of law are not erroneous. *See Alamo Cmty. Coll. Dist.*, 274 S.W.3d at 788. Appellants' issues one through five are overruled.

## III.   SUFFICIENCY CHALLENGE

By their sixth through ninth issues, appellants contend that the evidence is legally and factually insufficient to sustain the county court's judgment and challenges the following findings of fact rendered by the county court:

1.      [Appellants] entered into a lease with [Valle] on June 2, 2017 regarding the property. . . .;

2.      [Llamas] signed the Lease on behalf of [Valle] in the presence of [appellants];

4.      Said lease was assigned to [Llamas]; and

5.      The lease required [appellants] to make monthly rent payments of $1,500.00.

## A.      Applicable Law & Standard of Review

"When an appellant attacks the legal sufficiency of an adverse finding on an issue for which he did not have the burden of proof, the appellant must demonstrate that there is no evidence to support the adverse finding." *Editorial Caballero, S.A. de C.V. v. Playboy Enters., Inc.*, 359 S.W.3d 318, 328 (Tex. App.—Corpus Christi–Edinburg 2012, pet.

---

[3] "The fact that it might be necessary to introduce evidence of title in order to prove the landlord-tenant relationship does not deprive the county court of jurisdiction since the validity of the title is not in issue." *Haith v. Drake*, 596 S.W.2d 194, 197 (Tex. App.—Houston [1st Dist.] 1980, writ ref'd) (citing *Criswell v. Sw. Fid. Life Ins. Co.*, 373 S.W.2d 893 (Tex. App.—Houston 1963, no writ)).

denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005)). A no-evidence challenge will be sustained only if:

> (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.

*City of Keller*, 168 S.W.3d at 810 (quoting Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361 (1960)); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 770 (Tex. 2010) (quoting *City of Keller*, 168 S.W.3d at 827). We must view the evidence in the light most favorable to the verdict and "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* (quoting *City of Keller*, 168 S.W.3d at 827).

"In reviewing a factual-sufficiency challenge to a jury finding on an issue on which the appellant did not have the burden of proof, we consider and weigh all of the evidence and set aside the verdict only if the evidence that supports the jury finding is so weak as to make the verdict clearly wrong and manifestly unjust." *Editorial Caballero*, 359 S.W.3d at 329 (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)). We must examine both the evidence supporting and contrary to the judgment. *Id.* The fact finder is the sole judge of the witnesses' credibility, and it may choose to believe one witness over another, and we may not impose our own opinion to the contrary. *Id.* (citing *Golden Eagle*

10

*Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003)).

**B. Discussion**

Appellants exclusively challenge the factual and legal sufficiency of the evidence on the basis that there was no valid lease agreement because appellees did not own the subject property at the time the lease was signed; therefore, they assert, there was no predicate breach upon which the county court could base each finding of fact or conclusion of law. Having already rejected this contention, we determined that appellees established a landlord-tenant relationship although Valle did not hold title to the property at the time the lease was signed. *See 2616 S. Loop L.L.C.*, 201 S.W.3d at 355.

After viewing the evidence in the light most favorable to the verdict crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not, we conclude that this evidence is legally sufficient to support the county court's findings challenged by appellants regarding the existence of the lease and appellants' breach thereof. *See Del Lago Partners*, 307 S.W.3d at 770. In addition, after examining and weighing both the evidence supporting and contrary to the judgment, we conclude that the verdict is not clearly wrong and manifestly unjust to render the findings regarding the existence of the lease and appellants' breached thereof factually insufficient. *See Cain*, 709 S.W.2d at 176; *Editorial Caballero*, 359 S.W.3d at 329. Appellants' sixth through ninth issues are overruled.

**IV. DAMAGES**

By their tenth through fifteenth issues, appellants challenge the county court's award of damages and the following findings of fact rendered by the county court:

11

12.     The loss of rent damages [appellees] have incurred before the appeal to this Court and which are in the jurisdictional limits of the justice of the peace court is $9,999.00. [Appellees] nonetheless suffered additional damages in amounts outside the jurisdictional limits of the justice of the peace court;

13.     The loss of rent [appellees] incurred during the pendency of the appeal to this Court is $14,400.00;

14.     [Appellees] further suffered damages in the amount of $8,000.00 in the form of interest payments they made on a hard money loan that they otherwise would not have had to make had [appellants] vacated;

15.     [Appellants] also owed [appellees] late fees in the amount of $600.00 for late fees incurred during the pendency of the appeal to this court; and

16.     The total amount of damages incurred by [appellees] during the pendency of the appeal to this Court is $23,000.00.

## A.     Applicable Law & Standard of Review

A landlord may seek unpaid rent in a forcible detainer case filed in justice court, provided that the claim for unpaid rent is for an amount within the jurisdiction of the justice court. *See* TEX. R. CIV. P. 510.3(d). When, as in this case, an appeal of the judgment of the justice court is filed in the county court, the prevailing party may recover damages, if any, "suffered for withholding or defending possession of the premises during the pendency of the appeal." *Id.* R. 510.11. In other words, the prevailing party in county court may recover certain damages—those suffered as a result of maintaining or obtaining possession—incurred during the time period from which the justice court renders judgment to the time the county court renders judgment. Damages may include but are not limited to loss of rentals during the pendency of the appeal and attorney's fees in the justice and county courts. *Id*. Furthermore, damages that may be sought under rule

12

510.11 are "only those 'suffered as a *direct result* of withholding or defending possession.'" *Hong Kong Dev. v. Nguyen*, 229 S.W.3d 415, 434 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (emphasis added) (quoting *Hanks v. Lake Towne Apartments*, 812 S.W.2d 625, 627 (Tex. App.—Dallas 1991, writ denied)). Claims for any other damages arising out of the landlord-tenant relationship are not recoverable in a forcible detainer action but may be brought in a separate proceeding. *Krull v. Somoza*, 879 S.W.2d 320, 322 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (citing a since repealed rule discussing recoverable damages incident to the forcible detainer action); *see* TEX. PROP. CODE ANN. § 24.008 ("An eviction suit does not bar a suit for trespass, damages, waste, rent, or mesne profits."); *see also Serrano v. Ramos*, No. 13-13-00476-CV, 2015 WL 3826794, at *3 (Tex. App.—Corpus Christi–Edinburg June 18, 2015, no pet.) (mem. op.).

A trial court lacks jurisdiction to award damages that do not represent loss of rentals or directly relate to "withholding or defending possession of the premises." *See Nguyen*, 229 S.W.3d at 435–436 (discussing exemplary damages); *Hanks*, 812 S.W.2d at 627 (regarding tenant's counterclaim for wrongful retention of security deposit); *see also Allen-Mercer v. Roscoe Props.*, No. 03-15-00674-CV, 2016 WL 4506294, at *5 (Tex. App.—Austin Aug. 25, 2016, no pet.) (mem. op.) (discussing reletting and late fees); *Serrano*, 2015 WL 3826794, at *4 (discussing earnest money, unpaid property taxes, and reimbursement for repairs); *Whitmire v. Greenridge Place Apartments*, No. 14-09-01002-CV, 2011 WL 1413412, at *5 (Tex. App.—Houston [14th Dist.] Apr. 14, 2011, no pet.) (mem. op.) (discussing reletting fee).

**B.     Discussion**

**1.     Sufficiency Challenge to Damages Award**

In their tenth issue, by a single sentence, appellants make a blanket assertion that the evidence was insufficient to support the damages award and the damage award was excessive. However, appellants have not briefed these arguments. Appellants present no legal authority, citations to the record, discussion, or substantive analysis about their complaints. Thus, in accordance with rule 38.1(i) of the Texas Rules of Appellate Procedure, we find appellants inadequately briefed their complaints, and we decline to address them. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

**2.     Loss of Rent Damages Before Appeal to the County Court**

In their eleventh issue, appellants challenge finding of fact number twelve regarding the loss of rent appellees incurred before appeal to the county court, totaling $9,999.00. Appellants solely argue that because there was no lease they were not obligated to pay $1,500 rent per month. We have already determined that the evidence was legally and factually sufficient to support the county court's findings regarding the existence of the lease and appellants' breach thereof. Therefore, the county court did not err in awarding loss-of-rent damages before appeal. *See* TEX. R. CIV. P. 510.3(d). Appellants eleventh issue is overruled.

**3.     Rental Value During Pendency of Appeal to County Court**

In their twelfth issue, appellants challenge finding of fact number thirteen regarding

14

the loss of rent appellees incurred during pendency of appeal to the county court, totaling $14,400.00. The prevailing party in a forcible detainer case is authorized to recover damages suffered for withholding or defending possession of the premises during pendency of the appeal. *See* TEX. R. CIV. P. 510.11. Damages may include but are not limited to loss of rentals during the pendency of the appeal. *Id.* The measure of damages in a forcible detainer appeal is the reasonable rental value of the property during pendency of the appeal. *Adams v. Godhania*, 635 S.W.3d 454, 460 n.4 (Tex. App.—Austin 2021, pet. denied).

On January 29, 2020, the justice court granted appellants' plea to the jurisdiction, dismissing appellees' forcible detainer action with prejudice. On February 4, 2020, appellees appealed the justice court's order in the county court. On August 18, 2020, trial commenced over appellees' appeal in the county court. Thus, the time period of concern here is January 29, 2020 through August 18, 2020. The county court was limited to awarding damages incurred over this two-hundred-day period. *See id.* Mary Alice Palacios, a realtor, testified that the fair market rental rate of the property was between $2,200 and $2,400. Palacios testified that this range was based on her experience as a realtor and information from a multiple listing service (MLS) report.[4] Appellants argue that this testimony did not specify the market rental rate during the time period of the pendency of appeal, and thus, the county court's finding was not supported by sufficient evidence. However, Llamas testified as follows:

---

[4] Palacios further testified that MLS is a resource used by all realtors used to generate reports that compare properties and prices in certain areas.

| | |
|---|---|
| [Counsel for appellees]: | . . . .If you were to rent it—if they had vacated, and you were to rent it, what would you rent it for? What's the fair market, do you think, for — for a property? |
| [Llamas]: | [$]2[,]200 to [$]2[,]400. |
| [Counsel for appellees]: | And that's based on—on what? |
| [Llamas]: | Based on the area. I've looked at other properties on that area and that's without a pool. My property has a pool. |
| [Counsel for appellees]: | What else—can you describe the property, I guess, for the—so that the— |
| [Llamas]: | Yes. |
| [Counsel for appellees]: | —the Court and for the record? |
| [Llamas]: | It's a four bedroom, three bath, two-car garage[;] it has a pool, and it has an extra dining area. |
| [Counsel for appellees]: | And—and so—and you said—so maybe 20—if you were to rent it now, had they vacated, you would rent it at—at how much? |
| [Llamas]: | I would rent it at [$]2,400. |

It is undisputed that appellants were provided a notice to vacate by appellees on September 24, 2019, which demanded that appellants pay all rent owed or vacate the property within eleven days. Llamas's testimony indicated that he would have rented the property for $2,200 to $2,400 had appellants vacated. We infer Llamas's testimony to be in reference to the time that notice to vacate was provided, a date several months prior to January 29, 2020. Thus, the county court heard evidence establishing that the market rental rate on January 29, 2020, could have been $2,400. When asked what he would rent the property for 'now', the time of trial, Llamas testified he would rent it at $2,400 per

16

month. Thus, the county court heard evidence establishing that the market rental rate on August 18, 2020, could have been $2,400. In sum, the county court heard evidence that the market rental rent during pendency of appeal could have been $2,400. *Cf. Daftary v. Prestonwood Mkt. Square, Ltd.*, 399 S.W.3d 708, 712 (Tex. App.—Dallas 2013, pet. denied) ("Because HSM only offered evidence about the fair market rental value as of July 2008 and failed to offer any evidence showing the reasonable rental value during the pendency of the appeal, the trial court erred by awarding damages. . . ."). Accordingly, there was legally and factually sufficient evidence for the county court to render its finding of fact number thirteen. The county court did not err in awarding loss-of-rent damages during pendency of appeal. *See* TEX. R. CIV. P. 510.11. Appellants' twelfth issue is overruled.

### 4. Late Fees

In their thirteenth issue, appellants challenge finding of fact number fifteen regarding the late fees incurred by appellants during pendency of appeal to the county court, totaling $600. Appellants argue that because there was no lease, appellants were not obligated to pay late fees under the lease. We have already determined that the evidence was legally and factually sufficient to support the county court's findings regarding the existence of the lease and appellants' breach thereof. However, appellants also argue that appellees were limited to recovery of reasonable rental value. We construe this claim as a challenge to the county court's jurisdiction to award late fees.

Nothing in the record indicates that unpaid late fees impacted appellants ability to take possession of the property. We hold that unpaid late fees do not represent "loss of

17

rentals" and do not directly relate to appellants' "withholding or defending possession of the premises" under rule 510.11. *See* TEX. R. CIV. P. 510.11; *Nguyen*, 229 S.W.3d at 435–36. Therefore, while appellants may pursue recovery of unpaid late fees in a separate suit, the county court did not have jurisdiction to award late fees in this forcible detainer action. *See Krull*, 879 S.W.2d at 322. The county court erred in awarding late fees incurred during pendency of appeal. *See* TEX. R. CIV. P. 510.11. Accordingly, we sustain appellants' thirteenth issue regarding late fees.

### 5. Interest on Loan

In their fifteenth issue, appellants challenge the county court's damages award of $8,000 for interest on a loan taken out by appellees. In finding of fact number fourteen, the county court found that "[Appellees] further suffered damages in the amount of $8,000.00 in the form of interest payments they made on a hard money loan that they otherwise would not have had to make had [appellants] vacated." First, appellants argue that this damage award goes beyond the element of recovery. We construe this claim as a challenge to the county court's jurisdiction to award these damages. Second, appellants argue that because there was no lease, appellants were not entitled to payments from appellees that had to be replaced by loan proceeds.

As previously mentioned, the prevailing party in a forcible detainer appeal may recover certain damages—those suffered as a result of maintaining or obtaining possession—incurred during the time period from which the justice court renders judgment to the time the county court renders judgment. *See* TEX. R. CIV. P. 510.11. Llamas testified that he and Valle had to take out a hard money loan due to appellants'

breach:

[Counsel for appellees]: Okay. And how else have you been damaged by their failure to vacate?

[Llamas]: I—we've— well, me and my wife, we've had to get second jobs. And due to that, she got infected with the Covid, and all my family got infected. I was hospitalized twice. I've had— we've had attorney fees from previous—can you hear me?

[Counsel for appellees]: Yeah. Yeah, go ahead.

[Llamas]: Yeah, and they—we also had to get a—to—to pay the—we had to get a hard money loan to pay the property where we're living at. And the interest is 12 percent interest on that hard money loan.

[Counsel for appellees]: And would you have had to get that hard money loan if they would've—if they would have, one, been able to purchase it—come up with the funding?

[Llamas]: Not at all.

[Counsel for appellees]: And if they had vacated, and you were to have sold it to somebody else, you also wouldn't of had to get that loan; is that right?

[Llamas]: Yeah.

In addition, Valle testified the following:

[Counsel for appellants]: Would you have had to take out this second—or let me ask you this: Why did you take out that second job?

[Valle]: Because we didn't want to lose our house that we were supposed to pay with—with the money—with the 150.

[Counsel for appellants]: That's why you took out a hard money loan?

19

| | |
|---|---|
| [Valle]: | Yes. |
| [Counsel for appellants]: | And would you have had to get that second job or that loan, had you not—had they vacated the home? |
| [Valle]: | No. |

The testimony above makes clear that the loan was used for purposes of paying for appellees' own home, and not the property subject to the lease. Nothing in the record indicates that the loan or its accumulated interest impacted appellees' ability to take possession of the property. We hold that the damages awarded for loan interest in this case do not represent "loss of rentals" and do not directly relate to appellees "withholding or defending possession of the premises" under rule 510.11. *See* TEX. R. CIV. P. 510.11; *Nguyen*, 229 S.W.3d at 435–36. Therefore, while appellees may pursue recovery of loan interest in a separate suit, the county court did not have jurisdiction to award damages for loan interest in this forcible detainer action. *See Krull*, 879 S.W.2d at 322. The county court erred in awarding loan interest incurred during pendency of appeal. *See* TEX. R. CIV. P. 510.11. Accordingly, we sustain appellants' fifteenth issue.

### 6. General Damages Finding

In their fourteenth issue, appellants challenge finding of fact number sixteen regarding the total amount of damages incurred by appellees during pendency of appeal to the county court, totaling $23,000. Appellants argue that this finding is defective because it is a summation of damages found in findings of fact thirteen through fifteen. We have already rejected appellants' challenge to finding of fact thirteen regarding the loss of rent appellees incurred during pendency of appeal, totaling $14,400.00. However,

we have sustained appellants' challenge to finding of fact numbers fourteen and fifteen, having deemed the county court's damage award of unpaid late fees totaling $600 and loan interest totaling $8,000 as improper. Accordingly, appellants' fourteenth issue is sustained.

The county court's judgment expresses its $23,000 award of damages accrued during appeal as a total. The county court's findings of facts make clear that the $23,000 award was simply the sum of $14,400 for loss of rent, $600 for unpaid late fees, and $8,000 for loan interest. Pursuant to Texas Rules of Appellate Procedure 43.2(c), a court of appeals may reverse the trial court's judgment in whole or in part and render the judgment that the trial court should have rendered. *See* Tex. R. App. P. 43.2(c). We have determined that the county court's award for unpaid late fees and loan interest were improper on jurisdictional grounds, and therefore vacate those awards. *See id.* We leave the $14,400 award for loss of rent undisturbed. Accordingly, we render judgment of damages accrued during appeal to a total amount of $14,400. *See id.*

## V. ATTORNEY'S FEES

By their sixteenth through eighteenth issues, appellants challenge the county court's award of attorney's fees and conditional award of appellate attorney's fees.

### A. Applicable Law & Standard of Review

In Texas, a party may not recover attorney's fees unless authorized by contract or statute. *In re Nalle Plastics Fam. Ltd. P'ship*, 406 S.W.3d 168, 172 (Tex. 2013) (orig. proceeding) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006)). Recovery of attorney's fees by a prevailing landlord in a forcible-detainer action

21

is authorized by § 24.006 of the Texas Property Code and by rule 510.11 of the Texas Rules of Civil Procedure. *See* TEX. PROP. CODE ANN. § 24.006; TEX. R. CIV. P. 510.11. An award of attorney's fees must be supported by evidence that the fees are reasonable and necessary. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 489 (Tex. 2019). The reasonableness of attorney's fees is generally a fact issue. *Id.* We review attorney's fee awards for an abuse of discretion. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 850 (Tex. 2018).

The Texas Supreme Court has held that "the fact finder's starting point for calculating an attorney's fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate, and the fee claimant bears the burden of providing sufficient evidence on both counts." *Rohrmoos Venture*, 578 S.W.3d at 498 (citing *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012)). At minimum, sufficient evidence includes evidence of "(1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* (citing *El Apple*, 370 S.W.3d at 762–63). "General, conclusory testimony devoid of any real substance will not support a fee award." *Id.* at 501.

The trial court's award of attorney's fees may include appellate attorney's fees. *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 354–55 (Tex. 2020) (explaining how the lodestar analysis affects the evidence needed to support a contingent award of fees that have not yet been incurred). "There is no certainty regarding who will represent the

22

appellee in the appellate courts, what counsel's hourly rate(s) will be, or what services will be necessary to ensure appropriate representation in light of the issues the appellant chooses to raise." *Id.* at 355. However, a party seeking to recover contingent appellate fees is not excused by uncertainty from the need to provide opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services. *Id*.

## B.    Discussion

### 1.    Trial Attorney's Fees Award

In their sixteenth and seventeenth issues, appellants assert that the county court's award of attorney's fees is not supported by sufficient evidence demonstrating that the fees were necessary and reasonable. In this case, the county court awarded $11,000 in attorney's fees. Furthermore, in finding of fact number seventeen, the county court found that ". . . .[appellees] [had] incurred $11,000 in attorney's fees as a result of [appellants'] actions and these fees are reasonable and necessary." Appellant argues that the evidence offered by appellees' counsel was general, conclusive testimony. We agree.

At trial, appellees' counsel testified as to his law firm's hourly rate for partners and associates. Appellees' counsel also testified about the type of services that were performed. However, most notably, appellees' counsel did not testify as to who performed those services, whether it was a partner, associate, or paralegal, or the reasonable amount of time required to perform those services. Without said information, the county court could not properly calculate an attorney's fee award in this case. *See Rohrmoos Venture*, 578 S.W.3d at 498. Because the evidence was insufficient to support the county

23

court's attorney's fee award, it abused its discretion. We sustain appellants' sixteenth and seventeenth issues.

### 2. Conditional Appellate Attorney's Fee Award

In their eighteenth issue, appellants assert that the county court's award of conditional appellate attorney fees is not supported by sufficient evidence. In this case, the county court awarded "if applicable, the sum of $15,000.00 as necessary and reasonable attorney's fees if [appellants] should file a Bill of Review/Motion for New Trial proceeding or appeal to the Court of Appeals in connection with this case and be unsuccessful in any such effort." At trial, appellees' counsel did not testify about the services he reasonably believed would be necessary to defend the appeal and a reasonable hourly rate for those services. *Yowell*, 620 S.W.3d at 355. The evidence was insufficient to support the county court's award of conditional appellate attorney's fee, and therefore, the county court abused its discretion. *See Fort Worth Transp. Auth.*, 547 S.W.3d at 850. We sustain appellants' eighteenth issue.

Because we have sustained appellants' sixteenth, seventeenth, and eighteenth issue regarding trial and appellate attorneys fees, we conclude that the case must be remanded to the county court for a new trial as to attorney's fees. *See Barker v. Eckman*, 213 S.W.3d 306, 315 (Tex. 2006) (holding that the issue of attorney's fees should be retried if the damages awarded are reduced on appeal); *see also Young v. Qualls*, 223 S.W.3d 312, 314–15 (Tex. 2007) (per curiam).

## VI. CONCLUSION

We reverse the county court's award of damages pertaining to unpaid late fees and loan interest. We render judgment that the $600 in unpaid late fees and $8,000 in loan interest may not be awarded under Rule 510.11. Accordingly, we render judgment of damages accrued during appeal to a total amount of $14,400. *See* TEX. R. APP. P. 43.2(c). We reverse the county court's awards of trial attorney's fees and conditional appellate attorney's fees. We remand appellees' claims for trial attorney's fees and conditional appellate attorney's fees for a new trial. *See Young*, 223 S.W.3d at 314–15; *Barker*, 213 S.W.3d at 315. This is a limited remand. *See Corpus Christi Day Cruise, LLC v. Christus Spohn Health Sys. Corp.*, 398 S.W.3d 303, 309 (Tex. App.—Corpus Christi–Edinburg 2012, pet. denied) (explaining that when an appellate court remands a case and limits a subsequent trial to a particular issue, the trial court is restricted to a determination of that particular issue) (quoting *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986)). In all other respects, the county court's judgment is affirmed.


NORA L. LONGORIA
Justice

Delivered and filed on the
11th day of August. 2022.

25